**UNITED STATES of America ex rel. Jerry Lee AXSELLE, Petitioner,**

v.

**Walter W. REDMAN, Warden; the Attorney General of the State of Delaware Charles M. Oberly, III; Eugene Maurer, Esq.; Arlen Mekler, Esq.; Patricia Hannigan, Asst. Pub. Def., Respondents.**

Civ. A. No. 84–680 MMS.

United States District Court, D. Delaware.

Dec. 17, 1985.

Jerry Lee Axselle, petitioner, pro se.

Loren C. Meyers, Deputy Atty. Gen., Dept. of Justice, Wilmington, Del., for respondents Redman, Oberly and Hannigan.

Eugene Maurer, Jr., Arlen Mekler, Wilmington, Del., respondents, pro se.

## OPINION

MURRAY M. SCHWARTZ, Chief Judge.

Petitioner Jerry Lee Axselle, a prisoner at the Delaware Correctional Center, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging the constitutionality of his conviction on the ground he was denied effective assistance of counsel. For reasons discussed below, the writ will be granted unless the State of Delaware affords petitioner a new trial to commence within sixty days.

Petitioner was indicted and scheduled for trial before the Superior Court of the State of Delaware, in and for New Castle County. Shortly before trial, petitioner dismissed his privately retained attorney and requested a continuance in order to retain new counsel. On the court's denial of the motion, petitioner represented himself at trial. The court appointed as standby counsel petitioner's dismissed counsel, who was present throughout the trial.

Petitioner was convicted on four criminal counts, including possession of marijuana with intent to distribute and possession of a deadly weapon during commission of a felony. He appealed his conviction to the Delaware Supreme Court, alleging ineffective assistance of counsel on two separate grounds: 1) the trial court's denial of a continuance to allow petitioner to seek other counsel; and 2) the trial court's requiring petitioner to represent himself with his former attorney acting as standby counsel.

The Delaware Supreme Court rejected both facets of the ineffective assistance of counsel contention. It held that petitioner had failed to show good cause for a continuance and also that petitioner had elected to represent himself. *Axselle v. State*, 483 A.2d 632, slip op. at 2, 3 (Del.1984). The Delaware Supreme Court noted that the trial court's appointment of petitioner's former counsel as standby counsel was "well-established practice in the courts of this State," and held that, under settled Delaware law, the appointment of standby counsel who was familiar with the case and who took an active part in the trial when permitted by the *pro se* defendant satisfied the requirement that a criminal defendant be afforded counsel. *Id.* at 3.

Petitioner, having exhausted his remedies at the state level as required by 28 U.S.C. § 2254(b), is properly before this Court. The Honorable N. Richard Powers, to whom Axselle's petition was referred for decision, recommended the writ be denied and the petition dismissed. Petitioner filed a timely objection to the Magistrate's report and the matter is now before this Court for a de novo evaluation of the issues raised by the parties.

## FACTS

Defendant Axselle was arrested on July 2, 1982 and indicted one month later. At arraignment on August 17, 1982, Eugene Maurer entered his appearance as defense counsel. Trial was set initially for October 4, rescheduled to October 12, and then set for November 22, 1982.

Defendant, according to his own and Maurer's testimony, expressed dissatisfaction near the end of October, 1982, with the representation he was receiving. By letter dated November 1, 1982, Maurer advised defendant of the November 22 trial date and also that defendant was free to retain other counsel.

Defendant did not respond to this letter, and next contacted Maurer on Friday morning, November 19, 1982, at which time he discharged Maurer. That afternoon, Maurer and the prosecutor met in chambers with Judge Christie (now Chief Justice Christie) to discuss Maurer's motion on behalf of defendant for a continuance. Judge Christie denied the motion.

On Monday morning, November 22, 1982, defendant and Maurer appeared at 10:45 a.m. for a pretrial hearing before Judge Walsh (now Justice Walsh) to seek a contin-

uance in order to obtain new counsel. The court denied defendant's request as "untimely, lately filed, and prejudicial to the State," and ordered the case to continue as scheduled. Transcript of Proceedings before Hon. Joseph T. Walsh, Jr. at 10, *State v. Axselle*, Crim.Action Nos. IN82–07–0394, 0396, 0397, 0398, 0399, 0400, & IN85–08–1567 (Del.Super. Nov. 22, 1982) (hereinafter cited as "Walsh Tr.")

Judge Walsh informed defendant that he had to decide that morning whether to accept Maurer as his attorney, and that otherwise defendant would be responsible for conducting his own defense. Walsh Tr. at 11. The judge added he did not advise defendant to represent himself, "but if you want to do that, if that's your choice, I can't do anything to persuade you from that." *Id.*

Immediately prior to trial on the afternoon of November 22 there was a further colloquy among Judge Balick (the trial judge), defendant, Maurer, and the prosecutor concerning defendant's motion for continuance and his dissatisfaction with his attorney. The court told defendant that he would have to choose between representing himself with Maurer present as standby counsel and being represented by Maurer. Defendant replied, in part, "if I have to, I will try to handle it myself with some guidance along the way to procedures in the Court." Transcript of Proceedings before Hon. Bernard Balick, Jr. and Jury at A–7, *State v. Axselle, supra* (Del.Super. Nov. 22, 1982) (hereinafter cited as "Balick Tr.").

The court answered, "Fine. That is the way we will do it then." Id. at A–8.

Other than the exchanges described above, neither Judge Walsh nor Judge Balick made any further attempt to warn defendant of or explain to him the dangers of self-representation.

Defendant conducted his own defense at trial. The record reflects that as the trial continued, defendant made an increasing number of requests for assistance. On the morning of the second day of trial, defendant requested that the court appoint a public defender to advise him. The court refused. Balick Tr. at B–3 (Nov. 23, 1982).[1] Defendant later during the second day of trial requested that Maurer make an objection for him. *Id.* at B–107 to B–108. Maurer complied and moved for a mistrial, which was denied.[2] Maurer subsequently made three objections, *id.* at B–178, B–291, B–340, and a motion for judgment of acquittal on one charge proffered by the State. *Id.* at B–270. On the beginning of the third and last day of trial, defendant specifically requested Maurer to address the court on his behalf in order to introduce certain documents into the record. *Id.* at C–3 to C–6 (Nov. 29, 1982).

Defendant conducted the examination of witnesses throughout the course of the trial, *see, e.g., id.* at A–38 to A–67, B–81 to B–85, B–92 to B–103, testified on his own behalf, *id.* at B–331 to B–335, and made the opening and closing arguments to the jury. *Id.* at A–92 to A–97 (opening argument) & C–19 to C–39 (closing argument).

1. THE DEFENDANT: Yes, sir. First, I'd like to ask that if I'm going to have a counsel up here to give me advice through the trial, that perhaps you could bring me up a Public Defender or something. Mr. Maurer and I just don't seem to be hitting off to this [sic] and I don't think he'll help me raise objections if I need it. If I could just get another lawyer, not even familiar with the case, to point out the legalities for me, it's as good as I've got here.
   THE COURT: That is impractical. Mr. Maurer's duty is to advise you.
   THE DEFENDANT: He's not, though, Your Honor.
   THE COURT: Well, I am not satisfied of that. Apparently, you feel that that's true, but so far, the only thing I have observed is you

are not satisfied if the advice disagrees with your own opinion. That is not a basis for concluding that he is not performing his duty.
   THE DEFENDANT: Yes, Sir....
Balick Tr. at B–3 to B–4 (Nov. 23, 1982).

2. Maurer moved for a mistrial on the ground that the State in the presence of the jury had commented on the defendant's right to remain silent. Balick Tr. at B–108 (Nov. 23, 1982). The trial judge denied the motion, on the ground that the State had merely been offering proof that the defendant had given up his right to remain silent after being given a *Miranda* warning. *Id.* at B–108 to B–109.

The jury returned a verdict of guilty on all counts.

## ANALYSIS

The Sixth Amendment guarantees "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." Extended to state-court proceedings by the Due Process clause of the Fourteenth Amendment, *Gideon v. Wainwright,* 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963), the Sixth Amendment withholds from the courts, in all criminal proceedings, the power and authority to deprive an accused of life or liberty unless the accused has or waives the assistance of counsel. *Johnson v. Zerbst,* 304 U.S. 458, 463, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938).

Merely because a defendant appears *pro se* at trial does not establish a valid claim of ineffective assistance of counsel. The Supreme Court has held that the Sixth and Fourteenth Amendments guarantee an accused the right to conduct his own defense. *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). A defendant who validly waived the right to counsel cannot appeal on the ground of ineffective assistance; *i.e.,* that his own performance was ineffective.

Petitioner's claim of ineffective assistance of counsel is thus predicated on a claim that his waiver of the right to counsel was invalid. The Delaware Supreme Court held petitioner validly elected to represent himself. *Axselle v. State,* 483 A.2d 632, slip op. at 3 (Del.1983). Applying the waiver standard adopted by the Court of Appeals for the Third Circuit, however, this Court concludes petitioner's waiver was invalid.

### A. The Validity of Petitioner's Waiver of the Right to Counsel

"A waiver is ordinarily an intentional relinquishment of a known right or privilege." *Johnson v. Zerbst,* 304 U.S. at 464, 58 S.Ct. at 1023. The Supreme Court has cautioned "that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' " *Id.* (citations omitted). The Supreme Court requires that the accused " 'knowingly and intelligently' forgo" the benefits associated with the right to counsel. *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541 (quoting *Johnson v. Zerbst,* 304 U.S. at 464–65, 58 S.Ct. at 1023). To determine whether a defendant has intelligently waived the right to counsel depends upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the defendant. *Johnson v. Zerbst,* 304 U.S. at 464, 58 S.Ct. at 1023. "Although a defendant need not have the skill and competence of a lawyer in order competently and intelligently to choose self-representation, a defendant should be made aware of the dangers and disadvantages of self-representation so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.' " *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541 (quoting *Adams v. United States ex rel. McCann,* 317 U.S. 269, 279, 63 S.Ct. 236, 241, 87 L.Ed. 268 (1942)).

### 1. The Welty Standard for Effective Waiver

The Court of Appeals for the Third Circuit set out in *United States v. Welty,* 674 F.2d 185 (3d Cir.1982), guidelines for a court to determine if the defendant is knowingly and intelligently waiving the right to counsel.

Defendant Welty on the day of his trial before the United States District Court requested an opportunity to obtain new counsel or to represent himself. The trial court considered this request merely a delaying tactic, and told defendant he would have to retain his appointed counsel or represent himself. Defendant responded "I'll go without him" and the court thereupon dismissed defendant's appointed counsel. *Id.* at 187. On direct appeal, the Third Circuit Court of Appeals reversed and remanded for a new trial, finding there had not been

an effective waiver of the right to counsel. *Id.*

■ *Welty* requires a court to conduct certain inquiries when a defendant "on the eve of trial" seeks new counsel or, alternatively, to represent himself. *Id.* A court first must decide whether defendant's request for new counsel is substantial enough to justify a continuance of the trial in order to allow the defendant to obtain new counsel. If the court determines a continuance is not justified, the court must next inquire whether defendant wishes to waive the right to counsel. The defendant must then either proceed *pro se* or retain existing counsel. *Id.*

■ A court must "take particular pains in discharging its responsibility to conduct those inquiries concerning substitution of counsel and waiver of counsel. Perfunctory questioning is not sufficient." *Id.* A court should be properly chary of defendant's motives for requesting new counsel; but even when the request is made on the eve of or during trial, a court must inquire into the reason for the defendant's dissatisfaction with his existing attorney. *Id.* If, after making the appropriate inquiries, the court determines defendant has not shown good cause, the court may "properly insist that the defendant choose between representation by his existing counsel and proceeding *pro se.*" *Welty,* 674 F.2d at 188. *See also McKee v. Harris,* 649 F.2d 927, 930–31 (2d Cir.1981); *Wilks v. Israel,* 627 F.2d 32, 35–36 (7th Cir.1980); *Maynard v. Meachum,* 545 F.2d 273, 278 (1st Cir.1976).

■ Even if a court concludes defendant's eleventh-hour attempt to obtain new counsel is merely a delaying tactic, once the request is denied a court still has the obligation to ensure that defendant's choice between the remaining options—retention of the old counsel or self-representation—is made "knowingly and intelligently." *Welty,* 674 F.2d at 188, 191. The defendant "should be made aware of the danger and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Id.* at 188 (quoting *Faretta,* 422 U.S. at 835, 95 S.Ct. at 2541). That a defendant may have believed it possible to gain some improper advantage by firing his counsel and proceeding *pro se* does not mean the defendant understood all the implications and possible pitfalls of self-representation. *Id.* at 191.

■ A court should advise the defendant that he will have to conduct his defense according to the rules of evidence and of criminal procedure, with which the defendant may be unfamiliar; that the defendant may be hampered in presenting his best defense by his lack of knowledge of the law; and that the effectiveness of his defense may be diminished by his dual role as attorney and accused. *Id.*

> Moreover, the court should apprise the defendant of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

*Id.* at 188–89 (quoting *Von Moltke v. Gillies,* 332 U.S. 708, 724, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948) (plurality opinion)).

The *Welty* court acknowledged that conducting a "searching inquiry" into waiver of counsel poses "a difficult task" for the court, particularly when the defendant appears "experienced in the litigation process and friction has developed between the defendant and his counsel." *Id.* at 191. As the court observed, however, a judge routinely conducts such inquiries in taking guilty pleas, and "[w]e can expect no less of an inquiry here." *Id.*

In analyzing the record before it, the *Welty* court concluded that the trial court had made "little inquiry into whether Welty's decision to proceed *pro se* was made knowingly and intelligently." *Id.* The court of appeals found "substantially more emphasis by the court upon forcing a quick decision from Welty than on ensuring an intelligent and thoughtful course of action." *Id.* Finding it impossible to deter-

mine from the record whether Welty had truly understood the consequences of representing himself, the court remanded for a new trial. *Id.* at 196.

The *Welty* standard is fully applicable in the context of a habeas corpus petition. *Piankhy v. Cuyler,* 703 F.2d 728 (3d Cir. 1983).

### 2. Applying Welty to Petitioner's Case

■ The first step of the *Welty* analysis is to determine whether the state trial court made sufficient inquiry into the reasons for defendant's dissatisfaction with his attorney. The trial judge allowed Axselle to state at length his disagreements with counsel and his reasons for not seeking new counsel earlier. *See* Walsh Tr. at 2–3, 5–6, 7–9. Axselle admitted to the judge that he had had serious disagreements with attorney Maurer for over a month. *Id.* at 9. The Court holds Judge Walsh fully questioned defendant on this point and properly denied defendant's request as untimely. However, the second inquiry a court must make under *Welty* —whether defendant made a knowledgeable and intelligent waiver of counsel—was not satisfied.

After denying defendant's motion for a continuance, Judge Walsh did not advise defendant of the dangers of self-representation. The judge simply told defendant, "You have to make a decision this morning whether you'll accept Maurer," and that otherwise defendant would be responsible for his own defense. Walsh Tr. at 10. The advice the court offered defendant was far too abbreviated to satisfy the *Welty* standard:

> I don't advise that [conducting your own defense], but if you want to do that, I can't do anything to persuade you from that. But, in any event, your case will be tried today and you should get together with Mr. Maurer and decide to what extent he's going to represent you.

Walsh Tr. at 11.

Nor was defendant advised sufficiently of the dangers of self-representation at the commencement of trial. Judge Balick, the trial judge, was apprised by both Maurer and the prosecutor of what had transpired that morning before Judge Walsh. When the judge asked defendant if he had anything to add, defendant stated his reluctance to proceed *pro se:* "I don't think I indicated that I wanted to try this trial myself. I just wanted another lawyer who could help me go through the procedures. If I have to, I'll do it myself. It's not my desire...." Balick Tr. at A–6.

Despite this plainly expressed ambivalence, the court did not sufficiently warn defendant of the problems involved in self-representation. Like Judge Walsh, Judge Balick merely told defendant he had to make a choice. The judge stated:

> We always advise persons against representing themselves and this advice is given especially when the charges are serious. And you have several felonies charged against you. But there is a constitutional right that you have to represent yourself and, therefore, your choice in view of the denial of the continuance is whether you will represent yourself and then simply have Mr. Maurer here to advise you when requested or whether you will allow him to represent you today. Now, as to that choice, have you made up your mind?

*Id.* at A–6 to A–7. Defendant again voiced his reluctance: "... if I have to, I will try to handle it myself with some guidance along the way to procedures in the Court." *Id.* at A–7. The court answered:

> Fine. That is the way we will do it then. I would point out that the decision on how to handle the case depends on what subject is at issue. If you are representing yourself, you will, of course, make all decisions, but even if he represents you, the basic decisions are made by you, namely, whether to plead guilty or to go to trial, whether to testify or not, and not by him, so that on these basic matters, he would simply be advising you and you would be making the decision and he would follow through. But I gather what you are telling me is that under the circumstances, you will represent your-

self with his assistance and that is the way we will do it then....

This ended the discussion.

The trial record discloses that Mr. Axselle's personality would not endear him to many with whom he came into contact. Under the circumstances, the trial judges would have been fully justified in believing Axselle was merely attempting to disrupt and delay trial with his request for removal of counsel.

Nevertheless, examining the record in this case leads this Court ineluctably to conclude that the two colloquies between the court and the defendant were insufficient to establish that defendant "knowingly and intelligently" waived his right to counsel, as required by *Welty*. The state court here has failed adequately to discuss with petitioner the "dangers and disadvantages of self-representation." The record does not reflect that petitioner truly understood the consequences of representing himself. Heeding the admonition that a court must "indulge in every reasonable presumption against waiver," *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 1242, 51 L.Ed.2d 424 (1977), the Court holds that petitioner did not effectively waive his right to counsel.

## B. The Effect of Appointing Standby Counsel

Although the Delaware Supreme Court, relying in part on *Welty*, found the state trial court had not abused its discretion in denying Axselle's motion for a continuance, the Supreme Court did not attempt to justify under *Welty* the adequacy of Axselle's waiver of the right to counsel. Instead, the Delaware Supreme Court focused on the trial court's appointment of Maurer, the attorney whom Axselle had just dismissed, to serve as standby counsel. The Delaware Supreme Court in *Axselle v. State, supra*, slip op. at 3, cited as controlling precedent *Hicks v. State*, 482 A.2d 765 (Del.1984), under which a defendant

... was afforded a proper equivalent of a defense attorney (even if he had not made a complete waiver), [when] he was provided a standby attorney who was familiar with the case and ready, able, and willing to act on defendant's behalf and who did in fact take an active part in his defense when the defendant permitted him to do so.

*Hicks v. State, supra*, slip op. at 3. I disagree.

The mere *appointment* of standby counsel can never cure a defective waiver. The issue is whether the presence of standby counsel in the factual context of this case cures an ineffective waiver of counsel. Although there might be circumstances in which the performance of standby counsel may cure a defective waiver, this is not such a case.

Axselle did not enjoy in any meaningful sense the benefit of counsel during his trial. Attorney Maurer early in the trial asked the court for permission to leave because of difficulties with Axselle.[3] On the second day, Maurer told the court he understood he was not to play any active role unless specifically requested to do so by the defendant.[4] The court told Maur-

---

**3.** MR. MAURER: Excuse me, Your Honor. After the conversation I just had with the defendant, and I tried to explain to him what was going on at this point in time, he basically won't listen to me and told me I could leave if I wanted to. I'd ask leave of the Court to be excused. That's a choice he can make and I certainly don't get any great pleasure out of sitting here while Mr. Axselle examines these witnesses. And if he doesn't want my help and if he wants me to leave, I'd ask the Court to allow me to do that....
Balick Tr. at A–78 (Nov. 22, 1982).

**4.** Mr. MAURER: Your Honor, I have two points, if I just might. The first one is, if I could just get—in light of what Mr. Axselle is saying and has been saying, if I could just get a clarification of my role here so that I don't run into any problem at a later point in time. I perceive my role, at this point in time, to be to advise Mr. Axselle if he asks me. I have observed numerous things that have happened at this point in time which I would have objected to or advised him to do differently. I'm just going to keep my mouth shut unless he asked me to do something or asks for my advice, and when I tried to give him advice yesterday, he simply told me I could leave if I wanted to. So just so we can be real clear, I am not going to object no matter how

er that he "should simply attempt to advise Mr. Axselle, and he can decide whether he wants to accept your advice." Balick Tr. at B–14. As the trial progressed, defendant's evident antipathy towards Maurer slackened, for he made several specific requests of Maurer. *See supra* pp. 335–36. Defendant, not standby counsel, continued to make all the strategic decisions normally made by counsel, however. The words of Justice Black describing Gideon are equally apt here:

> Put to trial before a jury, [defendant] conducted his defense about as well as could be expected from a layman. He made an opening statement to the jury, cross-examined the State's witnesses, presented witnesses in his own defense, ... and made a short argument emphasizing his innocence to the charge....

*Gideon v. Wainwright*, 372 U.S. 335, 337, 83 S.Ct. 792, 792, 9 L.Ed.2d 799 (1963).

The Court cannot interpret defendant's requests to Maurer as proof that Maurer in any sense controlled the course of the litigation. *Cf. McKaskle v. Wiggins*, 465 U.S. 168, 182, 104 S.Ct. 944, 963, 79 L.Ed.2d 122 (1984) (it is "self-evident" that a *pro se* defendant's request for standby counsel's assistance does not deprive the defendant of control over his own defense). Conducting his own defense undoubtedly instructed the defendant in some of the practical difficulties of litigation. Defendant's requests to Maurer appear to reflect a growing comprehension that presenting his case was not an easy undertaking and to constitute an unspoken admission that his earlier decision to proceed *pro se* was ill informed and against his own best interest. That the *pro se* defendant gradually realizes the unhappy consequences of his earlier decision to waive the right to counsel cannot cure the defective waiver, however. At mid-trial it is too late to turn back the clock.

bad something is, sua sponte or on my own, and I think Mr. Axselle said he wants to handle the case himself. And if he has something to ask me, that's fine, and I hope that's compatible to what the Court sees as my role, because I don't want to be accused at a later

## CONCLUSION

Axselle has been denied the right to counsel guaranteed by the Sixth Amendment of the Constitution. The denial stems from his invalid waiver of the right to counsel. An order will issue directing that the writ of habeas corpus issue unless the State of Delaware affords Axselle a new trial to commence within sixty days.

time of not objecting to something which should have been objected to or allowing something that happened not to happen. I don't see that as my role here.

Balick Tr. at B–12 to B–13 (Nov. 23, 1982).