**Luis BULTRON, Defendant–Below, Appellant,**

v.

**STATE of Delaware, Plaintiff–Below, Appellee.**

No. 62, 2005.

Supreme Court of Delaware.

Submitted: Jan. 11, 2006.
Decided: March 30, 2006.

Michael C. Heyden, Esquire, Wilmington, Delaware for appellant.

Thomas E. Brown, Esquire, Department of Justice, Wilmington, Delaware for appellee.

Before HOLLAND, JACOBS, and RIDGELY, Justices.

RIDGELY, Justice.

Defendant Luis Bultron appeals his convictions by a Superior Court jury of second-degree burglary and misdemeanor theft. Bultron argues that the Superior Court erred by permitting his counsel to withdraw, by failing to appoint new counsel, and by requiring Bultron to proceed *pro se.* The Superior Court determined that Bultron waived or forfeited his right to counsel by his serious misconduct involving ongoing abuse of his attorney that

was just short of violence. Whether a defendant waives or forfeits his right to counsel through ongoing abusive conduct is an issue of first impression for this Court. We conclude that the Superior Court did not err in requiring Bultron to proceed *pro se*, because Bultron had forfeited his right to counsel. Accordingly, we affirm.

## I.

Before and during his trial, Luis Bultron was dissatisfied with his public defender, Edmund Hillis. Hillis had suggested to Bultron that acceptance of the State's plea offer would be in Bultron's best interest because the State's evidence against Bultron was strong and he would likely be convicted at trial. Nonetheless, Hillis was prepared to represent him.

Bultron claimed before the Superior Court that he could not receive a fair trial, because Hillis did not believe in his innocence and had refused to subpoena several witnesses. Bultron rejected the advice from Hillis and interpreted his counsel's assessment of the prosecution's case as a sign that Hillis would not extend his best effort to provide a defense. On several occasions, both on and off the record, Hillis assured Bultron that he would carry out his duty to represent Bultron to the best of his ability. Bultron insisted he was entitled to substitute counsel because he would not receive a fair trial. The Superior Court denied his request to replace Hillis with new counsel. However, the Court granted a continuance to allow the additional witnesses Bultron had identified to be subpoenaed.

On the new trial date, a different judge presided. Hillis asked to approach the bench before jury selection and disclosed Bultron's ongoing abuse. Hillis said:

My client had an application to proceed *pro se*. He's very adamant about it. He's been very derogatory to me, includ-

ing such phrases as you fat fuck. He wants to proceed *pro se*. I would love for you to grant that motion. He's not cooperating with me, he won't listen to me. He has been reading me rules of the Superior Court about ineffective assistance of counsel while the jury panel is in the room.

The trial judge instructed counsel that because the request for self-representation was untimely and disruptive, it would be heard after jury selection. Bultron asked to be heard and the jury array was escorted out of the courtroom. Bultron told the trial judge he wanted substitute counsel and that he did not ask to represent himself. The trial judge told Bultron the issue would be addressed after the jury was selected. Jury selection then proceeded with Hillis representing Bultron.

After jury selection, the trial judge again discussed with Bultron his concerns. Bultron wanted a better plea offer which the prosecutor declined to give. Bultron then complained about Hillis and his recommendation to accept the plea offer that was made. Hillis told the trial judge he took an oath to represent clients zealously over 20 years ago and that he would do the best that he could for Bultron at the trial. The trial judge denied Bultron's request for substitute counsel. Bultron then told the trial judge he was nauseated, and Bultron was escorted from the courtroom. Before taking a recess, the trial judge asked Hillis to meet with Bultron.

After several minutes, the court reconvened with Bultron present. Hillis reported that Bultron continued to be abusive and requested to withdraw from the representation. Hillis explained:

Our last discussion ... included accusations that I have been committed in the past to a mental hospital, a cross-examination concerning my finding of noncontempt in this Court by one of your col-

leagues and I'm just not putting up with that. I don't think I have to. He has called me a fat fuck a number of times... he has accused me repeatedly of lying—and he has created in matters that are privileged obstacles to an efficient representation of him that have now reached a level where I don't know what to say to this jury on his behalf.

The trial judge then said:

[t]he Court is not going to allow Mr. Bultron to bully people, including his court-appointed attorney.... Mr. Bultron has no right to be personally abusive to anyone and as much as a public defender has to put up with, at times, ungrateful and uncooperative clients, there are limits to what the Court can force a public defender to withstand and, obviously, in this case, based on what Mr. Hillis has said and based on what the Court has seen and heard, Mr. Bultron has abused Mr. Hillis enough.

After hearing Bultron's denial of Hillis' claim, the trial judge continued:

I'm satisfied as the finder of fact, having heard both you and Mr. Hillis discussing this matter in Court, that I believe Mr. Hillis' version of what took place and that is abusive behavior that is simply not going to be tolerated by the Court. Now, this is the way it is going to be, Mr. Bultron. This trial is going forward. It's not going to be continued a second time. If you think that it might be productive, I will send the jury to lunch now and let you speak to Mr. Hillis for a few moments during the lunch break to see if you and he can reach an agreement that's acceptable to

both of you with respect to him continuing to be your attorney in this trial. But if you and he cannot make your peace, then based on how we got to this situation, and that's been discussed at length now in Court, the Court is not going to force Mr. Hillis to be returning and the Court is not going to appoint you a new attorney and that's the way that that is going to be.

Bultron declined to speak with Hillis to make peace. The trial judge then permitted Hillis to withdraw. The trial proceeded with Bultron representing himself. He was convicted by the jury and sentenced as an habitual offender to eight years in prison, the minimum allowed. This appeal followed.

## II.

■ Bultron claims that the Superior Court erred by refusing to appoint new counsel. Whether or not to appoint new counsel is a matter within the discretion of the Superior Court.[1] Accordingly, our review is for abuse of discretion. An abuse of discretion occurs if the trial court's decision is based on "clearly unreasonable or capricious grounds."[2]

■ The Sixth Amendment to the United States Constitution confers the right to have the assistance of counsel. Although a defendant has the right to counsel, it is not an absolute right to the defendant's counsel of choice.[3] "Although there is a right to select one's attorney contemplated under the Sixth Amendment, 'the essential aim of the amendment is to guarantee an effective advocate for each

1. *See Wolf v. State*, Del.Supr., 1986 WL 16968, 1986 Del. LEXIS 1125 (1986) (Order) (citing *Ungar v. Sarafite*, 376 U.S. 575, 589, 84 S.Ct. 841, 11 L.Ed.2d 921 (1964); *Hicks v. State*, Del.Supr., No. 317, 1978, 434 A.2d 377, 380–81 (1981); *Payne v. State*, Del.Supr., 367 A.2d 1010 (1976)).

2. *Wright v. State*, Del.Supr., No. 482, 2000, 768 A.2d 472 (2001)(Order).

3. *Lewis v. State*, Del.Supr., No. 354, 1999, 757 A.2d 709, 713–14 (2000); *see also Swan v. State*, Del.Supr., Nos. 509/546, 2001, 820 A.2d 342, 350–351 (2003).

criminal defendant' rather than to [ensure that a defendant will inexorably be represented by a lawyer whom he prefers.]"[4]

 In *Muto v. State*, this Court held that a defendant's mere dissatisfaction with his counsel does not, by itself, justify the appointment of different counsel. While a defendant has a right to counsel, he does not have a right to counsel who will not disagree with him about how best to proceed with his case.[5] Bultron has shown only that he was dissatisfied with Hillis. The Superior Court did not abuse its discretion in denying Bultron's requests to appoint substitute counsel.

 Absent good cause for dismissing court-appointed counsel, a defendant has two options: the defendant may proceed either with his court-appointed counsel, or he may proceed *pro se*. If the defendant waives or forfeits his first option to have counsel represent him, a trial court may order him to exercise his remaining option and proceed *pro se*.

 The Third Circuit has defined what constitutes waiver and forfeiture of the right to counsel in *United States v. Thomas*[6] and *United States v. Goldberg*.[7] A defendant may (1) expressly waive his right to counsel with an affirmative statement, (2) waive his right to court-appointed counsel by his conduct[8] after a warning that continued abuse will result in the consequence of losing court-appointed counsel, or (3) forfeit[9] his right because of extremely serious misconduct, such as physical abuse without the need for a prior warning. Waiver is a knowing and intentional relinquishment of a known right, whereas forfeiture "results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right."[10]

> Forfeiture . . . is often confused with the closely related—but distinct—concept of waiver . . . A waiver is "an intentional and voluntary relinquishment of a known right." Most commonly, one waives a constitutional right by an "affirmative, verbal request" (e.g., requests to proceed pro se or to plead guilty). It is well established that any waiver of the right to counsel must be knowing, voluntary and intelligent. With regard to ensuring that a waiver is valid, the trial court's responsibility varies—depending on the right being waived. [A] trial court has no duty to ascertain that a waiver of the right to testify is valid. By contrast, if a defendant elects to waive the right to counsel, a trial court must make sure that the defendant has "an awareness of the dangers and disadvantages inherent in defending oneself."

---

4. *Hunter v. State*, Del.Supr., No. 111, 1994, 659 A.2d 228 (Nov. 29, 1994) (Order) (quoting *Wheat v. United States*, 486 U.S. 153, 160, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988)).

5. *Muto v. State*, Del.Supr., No. 472, 2003, Veasey, C.J., (Order) 2004 WL 300441, *2 n. 9, 2004 Del. LEXIS 88, *7 n. 9 (2004) (quoting *In Re Deputy*, Del.Supr., No. 120, 1998, 708 A.2d 630 (1998) (Order); *Austin v. State*, Del Supr., No. 429, 2000, 782 A.2d 262 (Del. 2001) (Order)) (internal citations omitted).

6. 357 F.3d 357 (3d Cir.2004).

7. 67 F.3d 1092 (3d Cir.1995).

8. "Waiver-by-conduct" arises once "a defendant has been warned that he will lose his attorney if he engages in dilatory tactics, any misconduct thereafter may be treated as an implied request to proceed *pro se* and, thus, as a waiver of the right to counsel." *United States v. Goldberg*, 67 F.3d 1092, 1100 (3d Cir.1995). Examples of sufficient conduct are verbal abusiveness, threats to harm an attorney, and attempts to make an attorney engage in unethical activities. *United States v. Thomas*, 357 F.3d 357, 363 (3d Cir.2004).

9. *United States v. Goldberg*, 67 F.3d 1092, 1100 (3d Cir.1995).

10. *Goldberg*, 67 F.3d at 1100.

Forfeiture, on the other hand, does not require the knowing and intentional relinquishment of a known right. Rather, forfeiture "results in the loss of a right regardless of the defendant's knowledge thereof and irrespective of whether the defendant intended to relinquish the right." To forfeit the right to legal representation, a defendant must engage in "extremely serious misconduct." For example, in *McLeod,* a defendant's attorney testified that the defendant was "verbally abusive"; had "threatened to harm the attorney"; had threatened to sue the attorney; and had tried to persuade the attorney to engage in unethical conduct. 53 F.3d 322, 325 (11th Cir.1995). The district court concluded that the defendant's behavior was so egregious as to constitute a forfeiture of the right to counsel—and the court of appeals for the Eleventh Circuit agreed by affirming that decision.[11]

 Regarding waiver and waiver by conduct, before a trial court may determine that a defendant has waived his right to counsel and must proceed *pro se,* the trial judge must first give certain warnings for any waiver to be valid. As the Third Circuit has held, "to the extent that the defendant's actions are examined under the doctrine of 'waiver,' there can be no valid waiver of the Sixth Amendment right

to counsel unless the defendant also receives *Faretta* warnings."[12] "A 'waiver by conduct' requires that a defendant be warned about the consequences of his conduct, including the risks of proceeding *pro se.*"[13]

In *Faretta,* the United States Supreme Court held that:

When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must knowingly and intelligently forgo those relinquished benefits. Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.[14]

The Third Circuit described a proper *Faretta* warning in *United States v. Welty* as follows:

In order to ensure that a defendant truly appreciates the "dangers and disadvantages of self-representation," the district court should advise him in unequivocal terms both of the technical problems he may encounter in acting as

---

**11.** *United States v. Leggett,* 162 F.3d 237, 249–250 (3d Cir.1998) (citations omitted).

**12.** *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (cited by *United States v. Goldberg,* 67 F.3d 1092, 1100 (3d Cir.1995) (citing *United States v. Bauer,* 956 F.2d 693 (7th Cir.) (failure to hire counsel where defendant has financial ability to do so constitutes a waiver by conduct), cert. denied, 506 U.S. 882, 113 S.Ct. 234, 121 L.Ed.2d 169 (1992); *United States v. Allen,* 895 F.2d 1577 (10th Cir.1990) (district court properly treated defendant's dilatory conduct as request to proceed pro se))). *See also United States v. Meeks,* 987 F.2d 575 (9th Cir.).

**13.** *United States v. Goldberg,* 67 F.3d 1092, 1101 (3d Cir.1995) citing (*Allen,* 397 U.S. at 337, 90 S.Ct. 1057; *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). "The court ... has the responsibility of ensuring that any choice of self-representation is made knowingly and intelligently, with an awareness of the dangers and disadvantages inherent in defending oneself." *United States v. Welty,* 674 F.2d 185, 188 (3d Cir. 1982).

**14.** *Faretta v. California,* 422 U.S. 806, 835, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).

his own attorney and of the risks he takes if his defense efforts are unsuccessful. The district court judge should tell the defendant, for example, that he will have to conduct his defense in accordance with the Federal Rules of Evidence and Criminal Procedure, rules with which he may not be familiar; that the defendant may be hampered in presenting his best defense by his lack of knowledge of the law; and that the effectiveness of his defense may well be diminished by his dual role as attorney and accused. [Moreover, the court should apprise the defendant of] the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

\* \* \*

While we do not require a detailed listing of advice similar to that mandated for guilty plea proceedings conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure, a defendant's waiver of counsel can be deemed effective only where the district court judge has made a searching inquiry sufficient to satisfy him that the defendant's waiver was understanding and voluntary.[15]

In *Thomas*, the Third Circuit provided examples of behavior sufficient to support a ruling of waiver-by-conduct: "verbal abusiveness, threats to harm an attorney,

and attempts to make an attorney engage in unethical activities."[16] The conduct in *Thomas* specifically, threats of physical abuse, abusive conduct, refusal to cooperate in trial preparation, and the defendant's tearing up correspondence and hanging up during a phone call was significant enough for the court to affirm the district court's finding of waiver-by-conduct.[17]

■■■■ If a defendant's behavior is sufficiently egregious, it will constitute forfeiture. Forfeiture, unlike waiver, does not require *Faretta* warnings or a warning to discontinue bad conduct. "Forfeiture can be found 'regardless of whether the defendant has been warned about engaging in misconduct, and regardless of whether the defendant has been advised of the risks of proceeding *pro se.*' "[18]

### III.

■■ In this case, the record shows that Bultron was warned of the ramifications of his actions, if they continued. However, the record does not support a finding that complete *Faretta* warnings were given. Because *Faretta* warnings were not given, the Superior Court's finding that there was a valid waiver by conduct cannot be sustained. The outcome of this appeal then turns upon whether Bultron forfeited his right to counsel by his conduct. Otherwise, a reversal of Bultron's convictions is required.

Forfeiture of the Sixth Amendment right to counsel has been held to occur when a defendant engages in "extremely serious misconduct."[19] In *United States*

---

**15.** *United States v. Welty,* 674 F.2d 185, 188–189 (3d Cir.1982). *See also United States ex rel. Axselle v. Redman,* 624 F.Supp. 332, 337 (D.Del.1985).

**16.** *Thomas,* 357 F.3d at 363 (citations omitted).

**17.** *Id.*

**18.** *Id.* at 362 (quoting *Goldberg,* 67 F.3d at 1101).

**19.** *United States v. Leggett,* 162 F.3d 237, 250 (3d Cir.1998) (quoting *United States v. Goldberg,* 67 F.3d 1092, 1102 (3d Cir.1995)).

*v. Leggett* the extremely serious misconduct amounted to the defendant assaulting his attorney. Violence is not the *sine qua non* of extremely serious misconduct. The Third Circuit has recognized that forfeiture had occurred where a defendant was verbally abusive, threatened to harm and to sue his attorney, and tried to persuade the attorney to act unethically.[20]

 The record supports a conclusion that Bultron intended to force his attorney to withdraw to prevent his trial from going forward after the Superior Court had denied Bultron's request for substitute counsel. This inference can be drawn from Bultron's continuing profanity and insulting conduct directed toward his counsel after jury selection and his refusal to make peace with counsel. Specifically, the trial judge found:

> No good cause existed for replacing Hillis. And Bultron was warned repeatedly about the consequences of his behavior. Moreover, Bultron's bad behavior toward Hillis escalated to the point where it amounted to serious misconduct. Bultron's behavior fell short of violence or threats, but only just. Bultron's behavior was insulting and unacceptable. In effect, Bultron forced Hillis to withdraw. And the court believes Bultron probably intended that result. In any event, Bultron undeniably acted after the court warned him.

 The Superior Court's factual findings, including its findings that Bultron's behavior fell just short of violence and was intended to force Hillis to withdraw, are entitled to deference. Necessarily, the appointment of substitute counsel during Bultron's trial would have required a mistrial, and consequently prevented Bultron's trial from going forward. Intentional misconduct for the purpose of forcing counsel to withdraw so that the trial cannot proceed is plainly obstructive to the administration of justice. The record supports the legal conclusion that Bultron forfeited his right to counsel by his conduct.[21]

 Although we find no abuse of discretion on the facts before us, for guidance in future cases, we caution that forfeiture of the right to counsel is an extraordinary circumstance not established by mere disagreements between client and counsel. Here, however, the record shows extremely serious misconduct that was intended to prevent the trial from going forward. The Superior Court did not abuse its discretion in permitting Hillis to withdraw as counsel in this case, nor did it abuse its discretion in requiring Bultron to proceed *pro se* because he had forfeited his right to counsel by his conduct.

## IV.

The judgment of the Superior Court is AFFIRMED.

---

20. *Id.* (citing *United States v. McLeod*, 53 F.3d 322, 325–326 (11th Cir.1995)).

21. While there is presently no U.S. Supreme Court decision involving the forfeiture of the Sixth Amendment right to counsel, the cases of *Illinois v. Allen*, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) and *Taylor v.* *United States*, 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973) lead us to conclude that obstructive conduct by a defendant that has the potential of preventing a trial from going forward may result in the forfeiture of the right to counsel. *See Wilkerson v. Klem*, 412 F.3d 449, 454–456 (3d Cir.2005); *Fischetti v. Johnson*, 384 F.3d 140, 151 (3d Cir.2004).