IN THE SUPREME COURT OF THE STATE OF DELAWARE

SEAN GREEN, §
§
   Defendant Below, § No. 507, 2014
   Appellant, §
§
   v. § Court Below—Superior Court
§ of the State of Delaware,
STATE OF DELAWARE, § in and for New Castle County
§ Cr. ID No. 1310001581
   Plaintiff Below, §
   Appellee. §

Submitted: April 30, 2015
Decided: July 14, 2015

Before **STRINE**, Chief Justice; **HOLLAND**, and **VAUGHN**, Justices.

## **O R D E R**

This 14th day of July 2015, upon consideration of the appellant's Supreme Court Rule 26(c) brief, the State's response and supplemental submission, and the record below, it appears to the Court that:

(1)   On May 21, 2014, a Superior Court jury found the appellant, Sean Green, guilty of Carrying a Concealed Deadly Weapon ("CCDW"), Possession of a Firearm by a Person Prohibited ("PFBPP"), and Possession of Ammunition by a Person Prohibited ("PABPP").[1]  Green was sentenced to a total of twenty-six years

---

[1] The State entered a *nolle prosequi* on other charges, including Attempted Robbery in the First Degree and Possession of a Firearm During Commission of a Felony.

of Level V incarceration, suspended after eleven years for decreasing levels of supervision. This is Green's direct appeal.

(2) On March 3, 2015, Counsel filed a brief and a motion to withdraw under Supreme Court Rule 26(c). Counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues. By letter, Counsel informed Green of the provisions of Rule 26(c) and provided Green with a copy of the motion to withdraw and the accompanying brief.

(3) Counsel also informed Green of his right to identify any points he wished this Court to consider on appeal. Green has raised several issues for this Court's consideration. The State has responded to the issues raised by Green and moved to affirm the Superior Court's judgment.

(4) When reviewing a motion to withdraw and an accompanying brief, this Court must: (i) be satisfied that defense counsel has made a conscientious examination of the record and the law for arguable claims; and (ii) conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[2]

(5) The following evidence was presented at trial. On October 3, 2013, Wilmington police officer Patrick McAndrew responded to a call in the 24th and

---

[2] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *Leacock v. State*, 690 A.2d 926, 927-28 (Del. 1996).

Market Street area.[3]   Officer McAndrew observed two black men at the intersection, one who was wearing black sweat pants and a black sweater, and another man standing to his right.  Officer McAndrew identified Green as the man on the right.

(6)   After Officer McAndrew ordered both men to stop, the unidentified man in black clothing ran away.  Green walked away, and as he did so, he turned his body in a way that prevented Officer McAndrew from seeing his right hip and checked his waistband with his hands.  Officer McAndrew believed Green was attempting to conceal a gun.

(7)   Despite additional commands to stop, Green continued to walk away from Officer McAndrew.  Officer McAndrew observed Green reach the back of a Ford Explorer, duck down, and throw an object under the vehicle that made a loud, metallic sound.  Officer McAndrew then seized Green and placed him in handcuffs.  When Officer McAndrew looked under the Ford Explorer, he saw a gun.  The gun was a loaded .45 semi-automatic.

(8)   Corporal Henry Law, a member of the Forensic Services Unit, testified that he processed the gun.  This processing included swabbing the gun for

---

[3] The record reflects that Officer McAndrew was responding to a robbery victim's report that two men who had stolen the victim's cell phone were standing at the corner of 24th and North Market Street.  The parties agreed that information about the call would not be presented to the jury because the State had dismissed the robbery charge against Green.

DNA, performing tests to find any fingerprints, and test-firing the gun. A latent fingerprint was found on the magazine in the gun.

(9) Corporal Sean Irons, a member of the Identification Unit within the Forensic Services Unit, and Corporal David Rhoades, the senior fingerprint examiner, testified that a fingerprint taken from Green matched the fingerprint on the gun magazine. Sara Lindauer, a DNA analyst with the Office of the Chief Medical Examiner, testified that she could not perform a DNA comparison between the DNA taken from the gun and Green's DNA sample because there were too many individuals' DNA in the swab taken from the gun. The parties stipulated that Green was not legally permitted to possess a firearm or ammunition. The jury found Green guilty of CCDW, PFBPP, and PABPP.

(10) Green raises several claims regarding Corporal Law and the fingerprint analysis. First, Green contends that the State did not identify Corporal Law as an expert witness and untimely produced Corporal Law's notes, leaving his counsel with insufficient time to cross-examine Corporal Law or obtain a fingerprint identification expert. Green did not raise these claims below, so we review for plain error.[4] "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize

---

[4] Supr. Ct. R. 8.

4

the fairness and integrity of the trial process."[5]  "[P]lain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[6]

(11)   Before trial, the State disclosed that it intended to call Corporal Irons as an expert in the area of fingerprint identification and that Corporal Irons' testimony would include a comparison of the latent fingerprint on the gun magazine to Green's fingerprint.  A copy of Corporal Irons' report was also provided to Green.  Corporal Irons performed a manual comparison of the fingerprint on the gun magazine to Green's inked fingerprint.

(12)   Corporal Law, who testified that he processed the gun and found a latent fingerprint on the gun magazine, was not identified by the State as an expert witness before trial.  Corporal Law did not testify about comparing the fingerprint on the gun magazine to Green's fingerprint, but the record reflects that he ran the fingerprint on the gun magazine through the Automated Fingerprint Identification System ("AFIS") and that no match was produced.  The record also reflects that Green and his counsel were aware of this negative match before trial.

---

[5] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

[6] *Id.*

5

(13) Assuming without deciding that Corporal Law testified as an expert witness and that the State should have identified Corporal Law as an expert witness before trial, Green has not shown error so clearly prejudicial to his substantial rights as to jeopardize the fairness of his trial. Based on the State's disclosure of Corporal Irons as an expert witness and production of Corporal Irons' report, Green knew before trial that the State was going to offer expert testimony about a match of the fingerprint on the gun magazine to Green's fingerprint. Given Corporal Irons' testimony that Green's fingerprint matched the fingerprint on the gun magazine and Green's advance knowledge of this testimony, Green has not show how he was prejudiced by Corporal Law's testimony.

(14) As to Green's claim that Corporal Law's notes were untimely produced and hurt his counsel's ability to cross-examine Corporal Law, Green fails to identify the information in Corporal Law's notes that he contends would have been helpful in cross-examination of Corporal Law. Green's counsel did not seek additional time to prepare for cross-examination of Corporal Law. On cross-examination, Green's counsel elicited testimony from Corporal Law that there was no way to determine how long a fingerprint had been on a particular surface. Green further claims that the untimely production of Corporal Law's notes left him insufficient time to retain an expert, but, as noted above, Green knew before trial that the prosecution planned to offer Corporal Irons' expert testimony about a

comparison of Green's fingerprint to the fingerprint on the gun magazine. As a result, Green was given ample notice that this issue would be the subject of expert testimony and could have taken steps to obtain his own expert on the subject.

(15) Second, Green claims that Corporal Law falsely testified that Green's fingerprint matched the fingerprint on the gun magazine. The record does not support this claim. Corporal Law did not offer any testimony about the fingerprint on the gun magazine matching Green's fingerprint. To the extent Green claims Corporal Law's testimony was false because he did not refer to the lack of a match in AFIS, that claim has no merit because neither the prosecution nor Green asked Corporal Law about the AFIS results.

(16) Third, Green claims that the State violated *Brady v. Maryland* by not producing favorable evidence regarding the lack of fingerprint match in AFIS.[7] Green also appears to claim that the State was required to inform the jury of the AFIS results, but cites no relevant caselaw in support of this proposition.

(17) There is no *Brady* issue because Green's counsel was aware of the AFIS result before trial and chose not to raise that result at trial. Outside of the jury's presence, Green's counsel informed the Superior Court that he had learned from the State that, depending on the orientation of the fingerprint in the database,

---

[7] 373 U.S. 83 (1963) (holding prosecution has duty to disclose favorable evidence that is material to the defense).

7

AFIS might not produce a fingerprint match. Green's counsel further stated that in light of the results of Officer Irons' manual fingerprint comparison, he did not believe it would be helpful to raise the AFIS results with the jury. Strategic trial decisions by defense counsel will not be reviewed on direct appeal for plain error.[8]

(18) Green next contends that the Superior Court erred by failing to give a jury instruction that he had a constitutional right not to testify and that the jury could not assume he was guilty based on his election not to testify. This claim is not supported by the record. The trial transcript reflects that the Superior Court informed the jury of Green's right to testify or not, and that his election not to testify could not be considered as an indication of guilt.

(19) Green's claim that the bailiff responsible for the jury during deliberations was not sworn in before the jury retired is also unsupported by the record. The trial transcript reflects that the bailiff swore to conduct the jurors to a room for deliberation and to not allow anyone to speak to them or to speak to them himself without leave of the Court, except to ask if they agreed upon their verdict.

(20) Citing *Brady v. Maryland*[9] and *Deberry v. State*,[10] Green argues that the State should have preserved and produced the clothing he was wearing at the

---

[8] *Robinson v. State*, 3 A.3d 257, 262 (Del. 2010).

[9] 373 U.S. 83 (1963).

time of his arrest. Green contends that the clothing was favorable to him because Officer McAndrew testified that Green was standing next to a man, who was not arrested, wearing a black sweater and black pants, but production of Green's clothes would show Green was wearing a black jacket the night of his arrest. Green did not raise this claim below, so we review for plain error.[11]

(21) Green has not shown plain error. First, Green has not shown that his clothing the night of his arrest was material to his defense. Officer McAndrew testified that he followed Green (not the person wearing black standing with Green), saw Green throw an object under a Ford Explorer, handcuffed Green, and saw a gun under the Ford Explorer. In light of this testimony, we fail to discern how Green's clothing at the time of his arrest would be material to his defense, even if Green was the man wearing black clothes and not the unidentified person who was with him and who was not followed by Officer McAndrew. Second, even assuming Green's clothing was material to his defense, the record reflects that the State produced a color photograph of the jacket Green was wearing the night of his arrest. If Green wished to introduce evidence regarding the color of his jacket, he could have used that photograph.

---

[10] 457 A.2d 744 (Del. 1983) (holding that the remedy for State's failure to preserve potentially exculpatory evidence is delivering a missing evidence instruction).

[11] Supr. Ct. R. 8.

(22) Green next claims that the Superior Court erred in how it handled his *pro se* motion to dismiss counsel and appoint new counsel. Green filed the motion a few days before trial. Before jury selection, the Superior Court asked Green why he filed the motion. Green stated that it was because he had not had the chance to speak with his counsel about what would happen at trial until that day, and that he did not have a chance to go over videos of the crime scene with his counsel. The Superior Court noted that several charges had been dropped and Green indicated that the videos related to the dropped charges. In response to the Superior Court's questions, Green agreed he was mostly concerned that he had not communicated with his counsel and that he was fine with his counsel once he had the opportunity to communicate with him. The Superior Court denied Green's motion for new counsel.

(23) Appointment of new counsel is within the discretion of the Superior Court.[12] "Although a defendant has the right to counsel, it is not an absolute right to the defendant's counsel of choice."[13] Green's dissatisfaction with his counsel was based on the lack of opportunity to go over certain videos, and their general lack of communication. At the time of trial, Green informed the Superior Court that his concerns regarding the videos related to the charges that had been

---

[12] *Bultron v. State*, 897 A.2d 758, 763 (Del. 2006).

[13] *Id.* at 762.

dismissed, and that he had communicated with his counsel and was fine with him. Under these circumstances, the Superior Court did not err in denying Green's motion for appointment of new counsel.

(24) Green next contends that his Sixth Amendment right to confront witnesses was violated because he did not have the opportunity to cross-examine one or both of the police officers who recovered and photographed the gun. Green did not raise this claim below, so we review for plain error.[14] "[T]he Confrontation Clause bars 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'"[15] Green does not identify any testimonial statements of the absent police officers that were admitted at trial. If Green wished to examine these officers regarding their observations of the gun as he now claims, he could have subpoenaed them. He did not do so. We find no plain error here.

(25) Finally, Green claims that the Superior Court allowed a former prosecutor or court employee to serve on the jury without conducting sufficient *voir dire* of that juror and that he recognized another juror as an employee of a juvenile detention center where he was once housed. Green did not raise these

---

[14] Supr. Ct. R. 8.

[15] *Ayers v. State*, 97 A.3d 1037, 1040 (Del. 2014) (quoting *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004)).

11

claims below, so we review for plain error.[16] The transcript of the jury *voir dire* does not reflect that any potential juror identified themselves as a former prosecutor or court employee or as knowing Green. After exercising seven challenges during selection of the jurors and alternate jurors, Green's counsel indicated that he was content with the jury. Nothing in the record supports Green's arguments regarding these jurors, or even more critically, that he promptly informed his counsel during *voir dire* or trial of his concerns about these jurors.[17] In the absence of any evidence supporting Green's contentions regarding the jury, we conclude that Green has not shown plain error.

(26) This Court has reviewed the record carefully and has concluded that Green's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Green's counsel has made a conscientious effort to examine the record and the law and has properly determined that Green could not raise a meritorious claim in this appeal.

---

[16] Supr. Ct. R. 8.

[17] The Superior Court judge asked all prospective jurors during *voir dire* to indicate whether they knew the defendant or his friends or relatives. App. to Appellant's Non-Merit Brief at 12 (Jury Selection Transcript, May 20, 2014). The record reflects that the Superior Court did excuse a prospective juror who identified himself as a probation officer for the State of Delaware. *Id.* at 13.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.  The motion to withdraw is moot.

BY THE COURT:

*/s/ Leo E. Strine, Jr.*

Chief Justice