Nathaniel BANKS, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 428, 2013.

Supreme Court of Delaware.

Submitted: May 14, 2014.
Decided: May 22, 2014.

Bernard J. O'Donnell, Esquire, Office of the Public Defender, Wilmington, Delaware, for appellant.

Karen V. Sullivan, Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before HOLLAND, BERGER and RIDGELY, Justices.

HOLLAND, Justice:

The defendant-appellant, Nathaniel Banks ("Banks"), appeals from final judgments entered in the Superior Court. Following a jury trial, Banks was convicted of Assault in the Third Degree, Carrying a Concealed Deadly Weapon, and two Counts of Endangering the Welfare of a Child. In this direct appeal, Banks raises one claim of error. He argues that the trial court abused its discretion when it restricted Banks' ability to call witnesses

to testify about certain prior acts of the complainant, Paulette Saunders ("Saunders"), and thereby violated his federal Constitutional right to present a favorable defense.

We have concluded that claim is without merit. Therefore, the judgments of the Superior Court must be affirmed.

### Background

In September 2012, Banks and Paulette Saunders ("Saunders") had been dating for about a year. Saunders had learned, by going through his cellphone and looking at his texts, emails, pictures and videos, and by looking at his Facebook account, that Banks was having sexual relationships with other women. Saunders was upset and hurt. She contacted one woman in August 2012 and another woman in September 2012.

The weekend ending September 16, 2012, Banks went to a motorcycle event in North Carolina. Over the weekend while he was gone, Saunders repeatedly texted Banks about his infidelities. On the evening of September 16, 2012, Banks returned to Saunders' home in Delaware. He put his motorcycle in the trailer in Saunders' driveway, entered the house, and told Saunders that she did not have to text him so much, saying, "I was coming home and I told you we would discuss whatever we need to discuss when I got home, and all you had to say was you missed me."

### Saunders' Testimony

Banks and Saunders then laid on a bed and spoke about Banks' infidelities and what decision he was going to make about their future. Saunders testified that Banks said, "[W]ell I'm here where I want to be." Saunders continued to question Banks about the other women. Saunders testified that Banks got upset about her continued questioning, sat up in bed, pointed his index finger in Saunders' face and said, "You see your face, you see your face? This is why I don't want to come home." Saunders pushed Banks' finger out of her face and told him, "You have to leave. You cannot stay here, you have to go." Banks said he would leave in the morning, and Saunders replied, "No, you're leaving and you're going to leave now."

According to Saunders, Banks became enraged, grabbed a knife off the waistband of his pants and pointed the knife at Saunders. Saunders was very frightened, jumped out of bed and said, "Oh, what you going to do, are you going to stab me now?" According to Saunders, Banks put the knife away and said, "[F]... you, bitch." Saunders walked to the dresser to get some shorts to put on instead of her nightgown.

Saunders testified that when she stood up from putting on her shorts, Banks punched her in the forehead with a closed fist so hard that she fell into the TV and then into the dresser. According to Saunders, Banks continued to hit her, and she curled up so Banks could not hit her face. Then Banks took one hand, pulled her head up, and punched her several times in the face with his other hand.

Saunders testified that she "was hollering, 'Get of me, get off me.' And I was hollering for my kids for help...." Saunders' oldest son, then 13 years old, came into the room. He saw Banks hitting Saunders while she was trying to cover her face. Saunders' oldest son asked Banks "what the f ... are you doing to my mom?" Banks stopped hitting Saunders and left the room. With two hands, Banks pushed Saunders' youngest son, who testified he had also heard Saunders screaming for help. Banks then went out the front door, drove his truck down the street, then

drove back and parked across the street from the house until police arrived.

### Saunders' Injuries

The record reflects Saunders suffered injuries as a result of the assault: a "busted lip" that was bleeding; two lumps on her forehead, including a two-inch lump above her right eyebrow; a lump and missing hair on the left side of her head; and scratches on the back of her neck. The injuries lasted two to three weeks and, before healing, became more bruised and swollen than they appeared the night of the assault, when the pictures admitted as evidence were taken. Officer Landis testified that Saunders' injuries appeared worse in person than as depicted in the photographs entered into evidence.

### Banks' Defense

Banks presented a defense of self-defense. Banks testified that he told Saunders that they were just friends and that he was leaving. Saunders became "very angry" and attacked him when they were in the bedroom. Banks denied having or displaying a knife in the bedroom and denied punching Saunders. Banks testified that the only force he used against Saunders was to push her against the wall or door in self-defense; that he did not intend to cause any physical injuries; and that the injuries Saunders suffered were only a result of his effort to defend himself against her blows.

### Standard of Review

▇▇▇▇ Banks claims on appeal that the Superior Court abused its discretion, and thereby violated his constitutional *right to* present relevant evidence, when the court limited the testimony of Shalontay Fews ("Fews") and Marjorie Wescott ("Wescott"). "Determination of relevancy under D.R.E. 401 and unfair prejudice under D.R.E. 403 are matters within the sound discretion of the trial court, and will not be reversed in the absence of clear abuse of discretion."[1] "'An abuse of discretion occurs when a court has exceeded the bounds of reason in view of the circumstances or so ignored recognized rules of law or practice to produce injustice.'"[2] Even if a court has abused its discretion in excluding evidence, this Court affirms unless there was significant prejudice to deny the accused of his or her right to a fair trial.[3] However, alleged constitutional violations pertaining to a trial court's evidentiary rulings are reviewed *de novo*.[4]

### Rules of Evidence

Rule 402 of the Delaware Rules of Evidence explains that all relevant evidence is admissible in a trial unless otherwise provided by statute or rule.[5] Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[6] Rule 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless

---

**1.** *Smith v. State*, 913 A.2d 1197, 1232 (Del. 2006); *Lampkins v. State*, 465 A.2d 785, 790 (Del.1983).

**2.** *Harper v. State*, 970 A.2d 199, 201 (Del. 2009).

**3.** *Allen v. State*, 878 A.2d 447, 450 (Del.2005).

**4.** *Id.*

**5.** D.R.E. 402.

**6.** D.R.E. 401.

presentation of cumulative evidence." [7] "The determinations of relevancy and unfair prejudice are 'matters within the sound discretion of the trial court, and will not be reversed in the absence of clear abuse of discretion.' " [8]

■ In addition, Rule 404 limits the admission of character evidence. In relevant part, Rule 404 provides:

(a) Character evidence generally. Evidence of a person's character or a trait of his character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:

. . . .

(2) Character of alleged victim. Except as otherwise provided by statute, evidence of a pertinent trait of character of the alleged victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the alleged victim offered by the prosecution in a homicide case to rebut evidence that the alleged victim was the first aggressor; [9]

But admissible character evidence may only include opinion or reputation evidence.[10] Under Rule 608(b), specific instances of conduct are inadmissible as impeachment evidence unless the conduct concerns the witness' character for truthfulness.[11] This limitation "is designed to avoid 'mini-trials' into the 'bad acts' of a witness which would require the use of extrinsic evidence to prove such acts." [12] Nevertheless, notwithstanding the exclusion of specific instances of conduct under Rule 608(b), "extrinsic evidence is admissible to establish that the witness has a motive to testify falsely." [13]

### Evidence at Issue

At trial, the defense stated that it wished to present Wescott's testimony that Saunders told her prior to the September 16th incident that she had access to Banks' Facebook password, email, and photographs. The defense asserted that Saunders "left the jury with the impression that the only thing she had access to was his phone and that she [had just] discovered this that weekend, that he had relationships with other women. . . ." The defense asserted that Wescott's testimony would contradict the benign impression Saunders' testimony gave to the jury. The defense also wished to present Wescott's testimony that, in October or November (a month or two after the September 16th assault), Saunders told her that Banks "was going to get what he deserved or whatever."

The defense also wished to present Fews' testimony that Saunders had threatened to assault Fews:

Miss Saunders had been in contact with her maybe four weeks prior to this incident and that Miss Saunders was engaged in an act of intimidation against Miss Fews, to tell her to stay away from my man, we're getting married, I'm having his baby; basically, several untruths. Now, the defense's theory is that this was a plan on the night of the . . . 16th. This was a plan, when Mr. Banks told

---

**7.** D.R.E. 403.

**8.** *Gallaway v. State,* 65 A.3d 564, 569 (Del. 2013).

**9.** D.R.E. 404(a)(2).

**10.** D.R.E. 608(a).

**11.** D.R.E. 608(b).

**12.** *Weber v. State,* 457 A.2d 674, 680 (Del. 1983).

**13.** *Id.*

her, "we are going to be nothing more than friends," she fabricated—and this goes for a motive, she fabricated this entire story about a knife, about being hit 20 times about the head because, at that point, her war to eliminate Mr. Banks's fellow female rivals, at least to push them out of the picture, it failed. And now she is retaliating by these charges against Mr. Banks.

This goes to her motive as to why she would lie. This goes to her credibility, why this jury should not believe her.... The defendant is entitled to explore her credibility in front of this jury ... and talk about a possible motive for her to lie. And her motive was that she is retaliating, when she knew full well ahead that Mr. Banks had other women. She attempted to tell those women, "*I'll whip your ass if you don't get away from my man.*" And when that failed and Mr. Banks told her that night, "No, we're just friends, we're not getting married, you're not having my baby, that was a lie that you said that you're having my baby," and—or we don't know whether it's a lie, but those are the arguments that can both go to the jury, that she fabricated her story.

The State objected to the introduction of the proposed testimony from both women under D.R.E. 402 and 403 because the proposed testimony had limited relevance and would create confusion, be a waste of time and be duplicative testimony, and create a "real risk of turning this into kind of a sideshow about ... who was fighting over who, who told whose boyfriend."

### Trial Judge's Evidentiary Rulings

The trial judge noted that "the character evidence is not generally admissible, whether—I mean, for the credibility purposes with respect to the testimony that you're going to [elicit] fine, but—I am going to strike any testimony of a witness that doesn't say that when I was talking to her, she told me that if I didn't go away I was going [to] fabricate a story with respect to this ... defendant.... I'm not going to get on this—into this wild goose chase with respect to Miss Saunders unless it is relevant to what happened. How is it going to be relevant unless they testify that she said, 'If you don't go away, I'm going to make up a story and get him into jail.' "

In response, defense counsel argued that Saunders' threat that the women should stay away from Banks "shows that she has antagonism towards the people involved and, as a result, antagonism towards him directly, in order to fabricate this." The trial judge concluded, "antagonism toward other people would be relevant if there were some type of terroristic threatening or something by Miss Saunders. The only thing that would be important in conversations between these witnesses and Miss Saunders would be whether she said, 'If you don't stop seeing him, I'm going to take care of him. That would be the motive. The other motive would be against a third party."

Following voir dire of Wescott, the trial judge ruled that Wescott's proposed testimony that Saunders told her in October or November that Banks "was going to get what he deserved or whatever" was inadmissible under Rule 403 because "the relevance is low and the prejudice is high as to confusion." However, the trial judge ruled that the rest of Wescott's proposed testimony was admissible. Wescott could testify that Saunders: had contacted her on September 12th or 14th; was "harsh" towards her; asked her who she was and what her relationship to Banks was; said that she found Wescott's number in Banks' phone and had accessed Banks' Facebook page and email; and said she could gain access to Banks' Facebook account by us-

ing his password that she had seen him enter when he thought she was sleeping.

Following voir dire of Fews, the trial judge concluded that Saunders' threats to Fews were not relevant. Accordingly, the trial judge ruled that Fews would not be permitted to testify that Saunders had threatened her. However, the rest of Fews' testimony elicited in voir dire was ruled to be admissible.[14]

### Evidence Properly Excluded

Banks argues that he "wanted the jury to be able to consider that if Ms. Saunders was angry enough to intimidate and threaten the other women, she would be angry and enraged enough to attack [him] that night and fabricate a story that he had attacked her." Banks also maintains that the fact Saunders was angry enough to physically threaten harm to other women, whom she had recently learned had relationships with Banks, corroborated her state of mind that night and belied the credibility of her claim that she was the passive victim of a physical attack by Banks. Banks submits that the disputed evidence also would have shown Saunders' bias against him and the other women in addition to Saunders' motivation to physically harm others who had deceived her.

■ While extrinsic evidence of bias against a defendant is generally admissible notwithstanding D.R.E. 608(b),[15] nothing about the threat to "whoop Fews' ass" if she did not stay away from Banks shows Saunders' bias against Banks. The Supe-

rior Court correctly concluded that such a statement shows bias against only Fews. Just as the statement does not show bias against Banks, it does not reveal a motive to fabricate a story against Banks.

■ Saunders' anger towards Fews, and Saunders' warning her to stay away from Banks in August 2012, does not make it more likely that she attacked Banks on September 16, 2012. Thus, the threat to Fews was not relevant under D.R.E. 401 and was inadmissible under D.R.E. 402. The trial court's statements, outside the presence of the jury, that it did not want to "put the victim on trial" did not constitute plain error and did not insert an unconstitutional presumption of guilt into the analysis.[16] Instead, the court's comment reflected only its concern about admitting evidence that was not relevant to the case before the jury.

Although Banks attempts to frame the evidence as being offered to prove "motive" or "state of mind," his arguments reflect that his purpose in offering the evidence was to prove that on September 16th Saunders acted in conformity with her prior threats to Fews. Such propensity evidence is inadmissible under D.R.E. 404(b).

■ In *Weber v. State*, this Court explained that, despite the exclusion of specific instances of conduct under Rule 608(b), "extrinsic evidence is admissible to establish that the witness has a motive to testify falsely."[17] But *Weber* does not

---

14. After a further discussion, and voir dire of Saunders, the Superior Court ruled that Fews could not testify that Saunders told her she was having Banks' baby because it would open the door to the State calling Saunders in rebuttal to explain that she had been pregnant with Banks' child, but had terminated the pregnancy. The Superior Court ruled that extreme unfair prejudice could inure to Banks

as a result of the voluntary termination of the pregnancy.

15. *See Weber v. State*, 457 A.2d 674 (Del. 1983).

16. *Jackson v. State*, 600 A.2d 21, 24 (Del. 1991).

17. *Weber v. State*, 457 A.2d 674 (Del.1983).

stand for the proposition that extrinsic evidence of specific conduct is *always* admissible to show bias. As we explained, "[t]he trial judge, of course, retains his normal discretion to limit the extent of such proof" under Rule 403, if the probative value of that evidence is outweighed by its *unfair* prejudice.[18]

This case is not like *Weber*,[19] which is relied on by Banks. In *Weber*, the trial judge excluded evidence that the murder victim's family had given prosecution witnesses, who were friends of the victim, cash payments after the witnesses told the victim's mother what the testimony would be.[20] This Court concluded that "[n]o great leap of logic is needed to infer that after this session with [victim's mother], followed by the payment of money, [the witness'] bias against Weber was enhanced to a greater degree than that created by his friendship with [the victim]."[21] Accordingly, evidence of cash payments to prosecution witnesses was clearly probative evidence of bias against the defendant.

■ By contrast, evidence of Saunders' threat that Fews should stay away from Banks or Saunders would "whoop her ass," is not probative of Saunders' bias *against Banks* or Saunders' motive to testify falsely. Similarly, Saunders' statement made to Wescott, that Banks "would get what he deserves," has limited relevance to the question of bias against Banks or to Saunders' motive to testify falsely against him; it does, however, have a high possibility of confusing the issues for the jury. If Saunders had made the statement *before* the September 16th altercation, it would have

been highly probative of credibility and motive to testify falsely, and it would not have caused confusion. However, because she made the statement *after* the incident, the relevance to Saunders' credibility was minimal. Therefore, the Superior Court correctly excluded Wescott's testimony under D.R.E. 403, because its probative value was substantially outweighed by the danger of confusion of the issues.

### Substantial Favorable Defense Evidence

■ Banks argues that his inability to introduce the statements by Fews and Wescott amounted to a violation of his Sixth Amendment right to present a defense. In support of his argument, Banks cites to the United States Supreme Court case of *Holmes v. South Carolina*.[22] The Court in *Holmes* held that a criminal defendant's rights are violated where an evidentiary ruling prevents a defendant from introducing evidence of third-party guilt and where the state introduces forensic evidence strongly supporting a guilty verdict.[23] Banks does not suggest that another person injured Saunders. Rather, he argues that his inability to show that Saunders was the aggressor is analogous to the inability to show that a third party committed the crime.

■ Assuming *arguendo*, that the Superior Court abused its discretion in excluding either Wescott's testimony or Fews' testimony, such error did not cause significant prejudice so as to deny Banks' right to a fair trial[24] or his right to present

---

18. *Id.*

19. *Id.*

20. *Id.* at 678–84.

21. *Id.* at 679.

22. *Holmes v. South Carolina*, 547 U.S. 319, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006).

23. *Id.* at 329–31, 126 S.Ct. 1727.

24. *Allen v. State*, 878 A.2d 447, 450 (Del. 2005).

favorable evidence. "The test is whether the jury is in possession of sufficient information to make a discriminating appraisal of the witness' possible motives for testifying falsely in favor of the government." [25]

Banks' constitutional argument is unavailing. First, Banks does not provide any reference in the record indicating that he raised this constitutional argument to the trial court. "We generally decline to review contentions not raised below and not fairly presented to the trial court for decision" unless we find "that the trial court committed plain error requiring review in the interests of justice." [26]

Second, even if we consider the argument on its merit, Banks has not shown a constitutional violation under *Holmes.* That case expressly acknowledges that "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." [27] Further, the record shows that Banks testified that Saunders hit and threatened him. Banks was able to present his defense that he only defended himself against Saunders' attacks.

The record reflects that the Superior Court's rulings did not preclude Banks from placing before the jury evidence that Saunders had searched his phone, accessed his Facebook account, and learned of his relationships with other women; that Saunders was upset by Banks' infidelities; that Saunders had contacted Fews and Wescott and was aggressive and very unhappy with them; that Saunders had told one of them to come pick up Banks' belongings if the woman was having a sexual relationship with Banks; that Saunders told Officer Landis that she was upset that Banks seemed uninterested in her; that the recording of Saunders' 911 call does not clearly show that she told 911 that Banks had a knife; that the police officer's report indicates Saunders told him that Banks took the knife from his waist even though she testified he got it from his pants on the floor; and that Saunders became very angry when Banks told her that they would just be friends and started to leave.

### Summary of Analysis

The United States Constitution permits judges "to exclude [defense] evidence that is repetitive ..., only marginally relevant or poses an undue risk of harassment, prejudice [or] confusion of the issues." [28] We hold that the Superior Court properly excluded testimony proffered by the defense that was either irrelevant or the probative value of which was substantially outweighed by the danger of confusion. However, even if the Superior Court abused its discretion in limiting Fews' and Wescott's testimony, Banks did not suffer significant prejudice such that his constitutional rights to a fair trial and to present a defense were violated. The jury had before it evidence from which Banks could argue that his version of events was correct—i.e., that Saunders was so upset by

---

**25.** *United States v. James,* 609 F.2d 36, 47 (2d Cir.1979) (affirming conviction even though trial court erred in excluding evidence under Rule 608(b)). *See also Weber v. State,* 457 A.2d at 682.

**26.** *Turner v. State,* 5 A.3d 612, 615 (Del.2010). *See* Del.Supr. Ct. R. 8.

**27.** *Holmes v. South Carolina,* 547 U.S. at 326, 126 S.Ct. 1727.

**28.** *Holmes v. South Carolina,* 547 U.S. 319, 126 S.Ct. 1727, 164 L.Ed.2d 503 (2006).

Banks' infidelities and by Banks telling her that they were just going to be friends that she assaulted him; that he defended himself; and that Saunders fabricated the story that he was the aggressor.

### Conclusion

The judgments of the Superior Court are affirmed.