IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RAMON JOYNER, | § | |
| | § | No.   424, 2018 |
| Defendant Below, | § | |
| Appellant, | § | Court Below:   Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | I.D. No. 1502005446 (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted:   February 13, 2019
Decided:   April 18, 2019

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

## O R D E R

On this 18th day of April 2019, upon consideration of the parties' briefs and the record on appeal, it appears that:

(1)     The appellant, Ramon Joyner, appeals from the Superior Court's denial of his motion for postconviction relief.   He contends that the Superior Court erred by rejecting his claim that he received ineffective assistance of counsel at trial.   Two of the charges for which Joyner stood trial were Attempted Rape in the First Degree and Rape in the Second Degree.   The claimed ineffectiveness was trial counsel's failure to object to testimony of a forensic nurse examiner when the nurse read verbatim a narrative account of the incident given to her by the victim of the alleged sexual assault.   Joyner argues that many portions of this narrative were not related

to medical diagnosis or treatment and, therefore, were not admissible under Delaware Rule of Evidence 803(4), the hearsay exception for statements made for medical diagnosis or treatment. He also argues that the narrative was cumulative, served only to bolster the testimony of the complaining witness, and was unfairly prejudicial under Delaware Rule of Evidence 403. For the reasons that follow, we reject Joyner's contentions and affirm.

(2) In addition to Attempted Rape in the First Degree and Rape in the Second Degree, Joyner was charged with Kidnapping in the First Degree, Strangulation, and Malicious Interference with Emergency Communications. All of the charges arose from Joyner's alleged assault upon an acquaintance, Amanda Brooks,[1] on February 8, 2015, at a hotel in Newark, Delaware.

(3) The trial transcript reflects that Brooks, her mother, and two friends went to a casino in Wilmington on February 7, 2015.[2] Brooks saw Joyner at the casino and struck up a conversation with him. Brooks and Joyner were acquainted with each other and had each other's cell phone numbers. Early the next morning, around 6:00 a.m., Brooks and Joyner decided to leave the casino in separate cars and go out for breakfast. After picking up food at a drive-thru restaurant, Brooks and

---

[1] Because Amanda Brooks is the pseudonym that was used on direct appeal pursuant to Supreme Court Rule 7(d), *see Joyner v. State*, 155 A.3d 832, 2017 WL 444842, at *1 n.1 (Del. Jan. 20, 2017) (Table), we reuse it for this postconviction appeal.

[2] The facts are largely taken from our opinion on direct appeal. *See Joyner*, 2017 WL 444842, at *1-2.

2

Joyner went to Joyner's nearby hotel room, where Brooks fell asleep after eating breakfast.

(4)     Brooks testified that when she woke up awhile later, Joyner was gone and her ID and car keys were missing.   She texted and called Joyner multiple times with no answer.   Joyner finally responded, sending her a text expressing his desire to have sex with her.   Brooks eventually agreed to have sex with Joyner for the purpose of obtaining her keys.   According to Brooks, when Joyner returned to the room with the keys, he stated that she needed to "live up to her end of the bargain" and have sex with him.[3]

(5)     Brooks testified that she did not want to have sex with Joyner, but that he was standing between her and the hotel room door and "something about his stance let her know that he wasn't going to give up easily."[4]   Consequently, Brooks picked up the room phone and dialed the front desk to ask for help, telling the woman who answered the phone, "I need someone in the room."[5]   At that, according to Brooks, Joyner became angry, snatched the phone from her hand, and hit her with a closed fist.   Brooks testified that Joyner continued to hit her as he held her down and buried her face in a pillow, which suffocated her, and that he pulled down her

---

[3] *Id.* at *1 (alteration omitted) (quoting Trial Tr. at 136 (Oct. 7, 2015), available at App. to Appellant's Opening Br. at A074).

[4] *Id.* (alteration and omission omitted) (quoting Trial Tr. at 137, available at App. to Appellant's Opening Br. A074).

[5] *Id.* (quoting Trial Tr. at 137, available at App. to Appellant's Opening Br. A074).

3

pants and touched her buttocks and vagina with his hands. According to Brooks, Joyner then took his arm off the back of her neck and used his hand to try to guide his penis into her vagina.

(6) Brooks testified that she attempted twice to flee the hotel room. The first time, she made it out of the room and to her car before Joyner caught her and dragged her back to the room where he continued to beat and choke her. When Brooks attempted to escape the second time, Joyner stopped her, ripped the phone cord from the base of the phone, tied her arms with that cord, and tied her feet with another cord. Joyner eventually left the room, and Brooks was able to get loose from the cords. She left the room and sought help from a maintenance worker. Hotel staff called 911. Shortly thereafter, police arrived, encountered Joyner in the hotel lobby, and placed him under arrest.

(7) Later that morning, Brooks went to Christiana Hospital where she was examined by a forensic nurse examiner. At trial, the nurse read, without objection, from the medical history she prepared from the information Brooks gave her at the hospital. This medical history included Brooks's narrative statement which described the entire event in substantial conformity with Brooks's in-court testimony, except that the medical history indicated that Brooks said that Joyner had penetrated her vagina with his finger. At trial, Brooks did not testify that such

4

penetration had occurred. At the request of Joyner's counsel, the nurse's written record of what she had been told by Brooks was not admitted as an exhibit.

(8) Joyner testified at trial. He described a much different scenario. He testified that when he returned to the room after Brooks woke up, the couple decided to shower together. According to Joyner, Brooks got out of the shower, saying that she had to get her facial cleanser, but instead she ran out of the hotel room with his jacket, which contained his money and ID. Joyner testified that he chased Brooks and stopped her before she made it to her vehicle. He testified that he found his money in her purse, that she then struck him, and that he struck her back. He denied attempting any sexual contact.

(9) Whether or not Joyner penetrated Brooks with his finger was relevant to the charge of Rape in the Second Degree. That count of the indictment alleged, in pertinent part, that Joyner "did intentionally engage in sexual penetration with [Brooks], without her consent."[6] At Joyner's request, the Superior Court agreed to instruct the jury on Unlawful Sexual Contact, which does not require penetration,[7] as a lesser-included offense of Rape in the Second Degree.

(10) The jury acquitted Joyner of Rape in the Second Degree but convicted him of the lesser-included offense of Unlawful Sexual Contact in the First Degree.

---

[6] App. to Appellant's Opening Br. at A015-16.
[7] 11 *Del. C.* § 769(a)(1).

The jury also convicted him of Kidnapping in the First Degree, Strangulation, and Malicious Interference with Emergency Communications. The jury could not reach a verdict on Attempted Rape in the First Degree, and the State entered a *nolle prosequi* on that charge.

(11) By acquitting Joyner of Rape in the Second Degree and convicting him of the lesser-included offense of Unlawful Sexual Contact in the First Degree, the jury resolved in Joyner's favor the one material discrepancy between the nurse's testimony concerning what she was told by Brooks and Brooks's testimony at trial— whether Joyner penetrated Brooks. Thus, Joyner suffered no prejudice from that aspect of the nurse's testimony.

(12) We affirmed Joyner's convictions on direct appeal.

(13) On January 30, 2017, Joyner timely filed a *pro se* motion for postconviction relief pursuant to Superior Court Criminal Rule 61. Counsel was appointed to represent him, and counsel filed an amended motion that presented four grounds for relief, including the ineffective-assistance claim that is now before us on appeal.[8]

(14) The Superior Court found that Joyner's ineffectiveness claim "fail[ed] to meet both *Strickland's* performance deficiency and prejudice prongs."[9] The

---

[8] The other three claims were unsuccessful in the Superior Court and have not been raised in this appeal.

[9] Appellant's Opening Br. Ex. A, at 9, 9-11 (applying *Strickland v. Washington*, 466 U.S. 668

6

court summarized Joyner's claim as being "an allegation that the [nurse's] testimony was cumulative and unduly prejudicial under DRE 403."[10] The court found that "[t]he notes were admitted as a statement made for the purpose of medical diagnosis or treatment under DRE 803(4)."[11] It then applied Rule 403 and found that "the probative value of the notes on the issue of medical diagnosis or treatment was not substantially outweighed by the danger of unfair prejudice or the needless presentation of cumulative evidence."[12] The court further found that "any risk that the jury might give the notes greater weight than the complaining witness' trial testimony was mitigated by the Court's decision not [to] allow the written notes to be admitted as an exhibit."[13] The court concluded: "Because the testimony was properly admitted, trial counsel was not ineffective in failing to object. For that same reason, Joyner was not prejudiced by counsel's failure to object."[14]

(15) We review the Superior Court's denial of a Rule 61 motion for postconviction relief for abuse of discretion.[15] We review legal and constitutional questions *de novo*.[16]

---

(1984)).
[10] *Id.* at 10.
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.* at 10-11.
[15] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013) (en banc).
[16] *Id.*

(16) To prevail on a claim of ineffective assistance of counsel, the defendant must satisfy the two-prong standard of *Strickland v. Washington*.[17] Under *Strickland*, the defendant must prove that his trial counsel's performance was objectively unreasonable and that his defense was prejudiced as a result.[18] Although judicial scrutiny under the first prong is "highly deferential" and courts must proceed with a "strong presumption" that counsel's conduct was reasonable,[19] there is no need to analyze whether an attorney's performance was objectively unreasonable if the alleged deficiency did not prejudice the defendant.[20]

(17) Under the second prong, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."[21] In other words, "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding."[22] The movant "must make specific allegations of actual prejudice and substantiate them."[23] These allegations must show "that there is a reasonable probability that, but for counsel's

---

[17] 466 U.S. at 687.

[18] *Id.* at 687-88, 691-92.

[19] *Id.* at 689.

[20] *Ploof*, 75 A.3d at 825; *see also Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

[21] *Strickland*, 466 U.S. at 693.

[22] *Id.*

[23] *Outten v. State*, 720 A.2d 547, 552 (Del. 1998) (en banc) (quoting *Wright v. State*, 671 A.2d 1353, 1356 (Del.) (en banc), *cert. denied*, 517 U.S. 1249 (1996)).

unprofessional errors, the result of the proceeding would have been different."[24] "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[25]

(18) In our view, even if portions of the nurse's narrative were not admissible under DRE 803(4), Joyner has failed to satisfy the prejudice element of *Strickland* because Brooks's testimony and other admissible evidence was sufficient to sustain the jury's verdict.[26] An error in admitting evidence that is not of constitutional magnitude "may be deemed to be 'harmless' when 'the evidence exclusive of the improperly admitted evidence is sufficient to sustain a conviction.'"[27] "Evidence erroneously admitted is frequently found to be harmless if it was cumulative, that is, if 'other evidence to the same effect was properly before the jury.'"[28] Here, the jury resolved the one material difference between the nurse's narrative and Brooks's testimony in favor of Joyner, and the nurse's narrative was

---

[24] *Albury v. State*, 551 A.2d 53, 58 (Del. 1988) (quoting *Strickland*, 466 U.S. at 694).

[25] *Strickland*, 466 U.S. at 694.

[26] *See Capano v. State*, 889 A.2d 968, 976 (Del. 2006) (en banc) (finding no prejudice under *Strickland* "because even without the prosecution's hearsay evidence, there was sufficient evidence to sustain the jury's verdict").

[27] *Cooke v. State*, 97 A.3d 513, 547 (Del. 2014) (en banc) (quoting *Nelson v. State*, 628 A.2d 69, 77 (Del. 1993)); *see also* Super. Ct. Crim. R. 52(a) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded."); *Banks v. State*, 93 A.3d 643, 646 (Del. 2014) ("Even if a court has abused its discretion in excluding evidence, this Court affirms unless there was significant prejudice to deny the accused of his or her right to a fair trial.").

[28] *United States v. Bercier*, 506 F.3d 625, 632 (8th Cir. 2007) (quoting *United States v. White*, 11 F.3d 1446, 1451 (8th Cir. 1993)); *id.* at 633 ("Thus, we have held in more than one case that admitting prior consistent statements that merely bolstered a witness's credibility by repeating testimony already in evidence was harmless error." (internal quotation marks omitted)).

otherwise cumulative of Brooks's testimony. In addition, there was significant other admissible evidence that tended to corroborate Brooks's testimony. This evidence included photographs that showed injury to Brooks's head, neck, back, left shoulder, right upper arm, and knees. The photographs supported Brooks's account of what had happened and tended to refute Joyner's account. Additionally, a witness who saw Brooks immediately after the incident testified that her "face was bloody" and her "clothes were all tore up."[29] Another witness testified that her "face was very bruised up."[30] There was also evidence that when the police examined the hotel room, they found an alarm clock with its cord on the floor and the telephone and a lamp with their cords tangled on the floor. This tended to corroborate Brooks's testimony that a struggle had taken place in the room. We are satisfied that the other admissible evidence in the case was sufficient to sustain Joyner's conviction and that any error in the admission of portions of the nurse's narrative was harmless and did not cause Joyner any unfair prejudice.

(19) Joyner has failed to establish that there is a reasonable probability that the result of his trial would have been different if the nurse's narrative had been redacted to remove the parts he claims were inadmissible. Therefore, the Superior Court did not err in denying his motion for postconviction relief.

---

[29] App. to Appellant's Opening Br. at A108.
[30] *Id.* at A044.

10

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior

Court is **AFFIRMED.**

BY THE COURT:

/s/   James T. Vaughn, Jr.
Justice

11