IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RAMON A. JOYNER, | § | |
| | § | No. 65, 2016 |
| Defendant Below, | § | |
| Appellant, | § | Court Below—Superior Court of the |
| | § | State of Delaware |
| v. | § | |
| | § | Cr. ID No. 1502005446 |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: October 3, 2016
Decided: January 20, 2017

Before **STRINE**, Chief Justice; **HOLLAND** and **SEITZ**, Justices.

**O R D E R**

This 20th day of January 2017, upon consideration of the appellant's brief under Supreme Court Rule 26(c), his attorney's motion to withdraw, and the State's response, it appears to the Court that:

(1)   In April 2015, the appellant, Ramon A. Joyner, was indicted for Attempted Rape in the First Degree, Rape in the Second Degree, Kidnapping in the First Degree, Strangulation, and Malicious Interference with Emergency Communications.   The charges arose from Joyner's assault of an acquaintance,

Amanda Brooks,[1] on February 8, 2015, at a hotel in Newark, Delaware. Joyner went to trial on the charges in October 2015.

(2) The trial transcript reflects that Brooks, her mother, and two friends, went to a casino in Wilmington, Delaware on February 7, 2015. Brooks saw Joyner at the casino and struck up a conversation with him. Brooks and Joyner were acquainted with each other and had each other's cell phone numbers. Early the next morning, Brooks and Joyner decided to leave the casino in separate cars and go out for breakfast. After picking up food at a drive-thru restaurant, Brooks and Joyner went to Joyner's nearby hotel room, where Brooks fell asleep after eating breakfast.

(3) Brooks testified that when she woke up awhile later, Joyner was gone and her ID and car keys were missing. Brooks texted and called Joyner multiple times with no answer. Joyner finally responded to Brooks, sending her a text expressing his desire to have sex with her and his frustration that she would not oblige. Brooks eventually agreed to have sex with Joyner for the purpose of obtaining her keys. According to Brooks, when Joyner returned to the room with the keys, he stated that she needed to "live up to [her] end of the bargain" and have sex with him.[2]

---

[1] The Court has assigned a pseudonym to the victim. Del. Supr. Ct. R. 7(d).
[2] Trial Tr. at 136 (Oct. 7, 2015).

(4)     Brooks testified that she did not want to have sex with Joyner, but that he was standing between her and the hotel room door and "something about his stance . . . let [her] know that he wasn't going to give up easily."[3]  Consequently, Brooks picked up the room phone and dialed zero to call the front desk to ask for help, telling the woman who answered the phone, "I need someone in the room."[4]  At that, according to Brooks, Joyner became angry, snatched the phone from her hand, and hit her with a closed fist.  Brooks testified that Joyner continued to hit her as he held her down and buried her face in a pillow, which suffocated her, and that he pulled down her pants and touched her buttocks and vagina with his hands.  According to Brooks, Joyner then took his arm off of the back of her neck and used his hand to try to guide his penis into her vagina.  Brooks testified that when she felt his penis on her buttocks she "started squirming" and "thrust [her] body on the floor, and [she] literally fell on the floor."[5]

(5)     Brooks testified that she attempted twice to flee the hotel room during the ordeal.  The first time, Brooks made it out of the room and to her car before Joyner caught her and dragged her back to the room where he continued to beat and choke her.  When Brooks attempted to escape the second time, Joyner stopped her, ripped the phone cord from the base of the phone and tied her arms with it and

---

[3] *Id.* at 137.
[4] *Id.*
[5] *Id.* at 140–141.

her feet with another cord. According to Brooks, when Joyner eventually left the room, she untied her arms, deadlocked the door, and attempted without success to reconnect the phone and call 911. Brooks periodically looked outside for Joyner, but she stayed in the room even after there was no sight of his car. Eventually Brooks left the room and sought help from a maintenance worker.

(6) When Joyner left the room he went to the hotel front desk to check out and retrieve his room deposit. A few minutes later, and while Joyner was still in the hotel lobby, Brooks and the maintenance worker entered the lobby and alerted other hotel staff about the altercation in Joyner's room. The hotel staff called 911. Joyner remained in the lobby, stating that he wanted to explain to the police that Brooks had attempted to rob him. Officers from the Delaware State Police then arrived at the scene and arrested Joyner.

(7) Later that morning, Brooks went to Christiana Hospital where she was examined by a forensic nurse examiner. At trial, the nurse read from the medical history she prepared of the information Brooks told her about why Brooks was at the hospital, which included Brooks' report that Joyner had penetrated her vagina with his finger.[6]

(8) On the second day of trial, the Superior Court granted Joyner's request for a jury instruction on unlawful sexual contact as a lesser-included

---

[6] *Id.* at 60.

offense of rape second degree. Later that day, at the conclusion of the State's case, Joyner moved for a judgment of acquittal on rape second degree, arguing that Brooks never testified that Joyner penetrated her with his finger. The Superior Court denied the motion, ruling that the forensic nurse examiner's testimony established a sufficient evidentiary basis to submit the rape second degree charge to the jury.

(9) When it was his turn to testify, Joyner described a much different scenario. Joyner testified that when he returned to the room after Brooks woke up, the couple decided to shower together. According to Joyner, Brooks got out of the shower, saying that she had to get her facial cleanser, but instead she ran out of the hotel room with his jacket, which contained his money and ID. Joyner testified that he chased Brooks and stopped her before she made it to her vehicle, and when he found his money in her purse, Brooks struck him, and he struck her back. Joyner denied attempting any sexual contact.

(10) At the conclusion of the three-day trial, the jury convicted Joyner of unlawful sexual contact in the first degree (as a lesser-included offense of rape second degree), kidnapping first degree, strangulation, and malicious interference with emergency communications. The jury could not reach a verdict on attempted rape first degree, and the State entered a *nolle prosequi* on that charge. The Superior Court sentenced Joyner to a total of twenty years of unsuspended Level V

5

incarceration followed by six months at Level IV and concurrent terms of probation. This is Joyner's direct appeal.

(11) On appeal, Joyner's appellate counsel[7] has filed a no-merit brief and a motion to withdraw under Supreme Court Rule 26(c). Appellate counsel asserts that, based upon a complete and careful examination of the record, there are no arguably appealable issues. Appellate counsel provided Joyner with a copy of the motion to withdraw and the no-merit brief in draft form and advised Joyner that he could submit written points for the Court's consideration. Joyner has submitted several written points, which are included in the brief filed with the Court. The State has filed a response to Joyner's points and has moved to affirm the Superior Court's judgment.

(12) When reviewing a motion to withdraw and an accompanying brief under Rule 26(c), the Court must be satisfied that the appellant's counsel has made a conscientious examination of the record and the law for arguable claims.[8] Also, the Court must conduct its own review of the record and determine whether "the appeal is indeed so frivolous that it may be decided without an adversary presentation."[9] In this case, having conducted "a full examination of all the

---

[7] Joyner was represented by different counsel at trial.
[8] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 (1988); *Anders v. California*, 386 U.S. 738, 744 (1967).
[9] *Penson v. Ohio*, 488 U.S. at 82.

proceedings" and found "no nonfrivolous issue for appeal,"[10] the Court is satisfied that Joyner's appellate counsel made a conscientious effort to examine the record and the law and properly determined that Joyner could not raise a meritorious claim on appeal.

(13) In his first point on appeal, Joyner claims that the Superior Court failed to rule on his motion to dismiss counsel and appoint new counsel that he filed in July 2015. The claim is not supported by the record, which reflects that the Superior Court ruled on the motion at a hearing on August 18, 2015, more than a month before trial.[11]

(14) Joyner's motion to dismiss counsel and appoint new counsel stemmed from his belief that his trial counsel was not devoting enough time to the case. During the August 18 hearing, Joyner told the Superior Court that his trial counsel had spoken to him only once, and that was only because Joyner had filed the motion to dismiss counsel and appoint new counsel. Moreover, Joyner told the court that when they finally spoke a few days before the hearing, trial counsel did not discuss trial strategy with him, which suggested to Joyner that trial counsel had no strategy.

---

[10] *Id.* at 80.

[11] Hr'g Tr. (Aug. 18, 2015) (hearing on motion to dismiss counsel and appoint substitute counsel).

(15) After hearing from Joyner, the Superior Court denied the motion to dismiss counsel, ruling that Joyner's dissatisfaction with his trial counsel a month and a half before trial was not sufficient cause to appoint new counsel. The court advised Joyner that, going forward, his options were to proceed with his trial counsel, retain private counsel, or seek permission to represent himself.

(16) The Superior Court's denial of Joyner's motion to dismiss counsel and appoint new counsel was not an abuse of discretion. When affirming the Superior Court's decision on this issue, we rely on the broad discretion that a trial judge must be afforded to decide a motion to appoint new counsel.[12] In this case, the trial judge was familiar with Joyner's case and with trial counsel's reputation, experience, and ability to be ready to represent Joyner at a trial scheduled in six weeks. Furthermore, it does not appear that trial counsel was neglecting the case. The record and Superior Court docket reflect that trial counsel filed motions on Joyner's behalf in March and April 2015 and participated in an office conference and final case review in June 2015. Under these circumstances, the Superior Court's decision that Joyner's dissatisfaction with his trial counsel did not justify the appointment of new counsel was not an abuse of discretion.

(17) Having said that, given that the record does not contradict Joyner's contention that trial counsel did not meet with him for the first time until a few

---

[12] *Bultron v. State*, 897 A.2d 758, 762 (Del. 2006).

days before the August 18 hearing, we would be remiss in not acknowledging Joyner's concern. By August 2015, Joyner had been in jail for six months and was facing very serious felony charges. This case turned in large measure on the comparative credibility of Brooks' story versus Joyner's story. Under these circumstances, assuming that trial counsel had, in fact, not yet met with Joyner, it is clear Joyner had a rational basis to wonder how his trial counsel could effectively defend him unless counsel spent time with him going over his version of events and sharing what counsel knew of the State's theory.

(18) Given this potential reality, it is not surprising that the next issue on appeal concerns Joyner's request for a trial continuance to obtain private counsel. Joyner sought the continuance on the first day of trial, telling the court that he did not "feel comfortable" with his trial counsel, and that he needed time to arrange for the appearance of privately retained counsel or, in the alternative, to prepare for trial so that he could represent himself.[13] Joyner told the court that he had contacted a private attorney but had not heard back from him, and that he would "rather go pro se."[14]

(19) The Superior Court denied Joyner's request for a continuance after finding that: the private attorney retained by Joyner to review the case had not entered an appearance; the jury and witnesses were ready to proceed; and trial

[13] Trial Tr. at 13 (Oct. 6, 2015).
[14] *Id.*

9

counsel was ready to try the case. The court advised Joyner that his options were to continue with his trial counsel or to represent himself without a continuance. Faced with those options, Joyner chose to continue with trial counsel as his counsel.

(20) Joyner claims that the Superior Court erred when denying his motion for a continuance to arrange for the appearance of privately retained counsel. When faced with a request for a change in counsel at the start of a criminal trial, the Superior Court must determine if the reasons for a change in counsel justify a continuance of the trial to make such a change.[15] We review the denial of a continuance for a change of counsel at the start of a criminal trial for an abuse of discretion.[16]

(21) Joyner requested the continuance because he was uncomfortable with trial counsel and wanted to arrange for the appearance of privately retained counsel. Joyner's concerns about his trial counsel, however, were raised at the August 18 hearing six weeks earlier. At that time, the Superior Court advised Joyner that his options were to proceed with trial counsel, retain private counsel, or seek permission to represent himself.

(22) Joyner had an opportunity to retain private counsel but did not advise the court of his intention to retain such counsel until October 6, the first day of

---

[15] *Stevenson v. State*, 709 A.2d 619, 630–31 (Del. 1998).
[16] *Id.*

10

trial. Considering that the jury, witnesses, trial counsel, and counsel for the prosecution were ready to proceed on October 6, and that Joyner's private counsel had not entered an appearance in the case, the Superior Court's denial of Joyner's request for a continuance to arrange for the appearance of private counsel was not an abuse of discretion.

(23) A discretionary ruling on a motion for a continuance will not be disturbed by this Court unless the ruling is based on clearly unreasonable or capricious grounds, which was not the case here.[17] That said, we again acknowledge that if, in fact, trial counsel did not speak to Joyner until six weeks before trial, Joyner was put under a considerable time pressure to obtain new counsel, and his motion for a continuance is understandable. Nonetheless, the denial of the motion was within the wide discretion of the Superior Court.[18]

(24) Following the denial of Joyner's request for a continuance, the Superior Court took a brief recess. After the recess, but before the jury or Joyner were brought back into the courtroom, Joyner's trial counsel alerted the court that Joyner was unhappy that his request for a continuance had been denied. Trial counsel expressed concern that Joyner's unhappiness could lead to a disruption at trial, and both counsel suggested that the court address the situation in a cautionary instruction. The courtroom discussion is excerpted here:

[17] *Hicks v. State*, 434 A.2d 377, 381 (Del. 1981).
[18] *Secrest v. State*, 679 A.2d 58, 64–65 (Del. 1996).

TRIAL COUNSEL: Your Honor . . . when I tried to talk to [Joyner] after you last addressed him, he was making some statements about he's not just going to sit by and let nothing happen . . . while this trial happens or he's railroad[ed]. . . . So I wanted to caution, thought it might be a good idea to bring it to the Court's attention, make an instruction.

TRIAL JUDGE: Do you have any suggestions anybody?
PROSECUTOR: State would ask the Court to remind Mr. Joyner the rules of the courtroom, but beyond that, I don't think there's much that can be done unless he is so disruptive.

TRIAL JUDGE: I am reluctant to do that, and I will tell you why. . . . [His relationship with trial counsel] doesn't appear to be the best from his standpoint, and . . . if I were to say something to him about decorum in the courtroom, it might seem to him that . . . [trial counsel is]a pipeline to me, which might undermine an opportunity to repair the relationship, but I will talk to the [Court Officers] and tell them to be on special alert.

TRIAL COUNSEL: I already did that. I understand that, Your Honor.

* * *

TRIAL JUDGE: [I]t might be good of you to . . . let him know if you have concerns along those lines that it's only going to [harm] him in front of the jury any misbehavior. [H]e's not going to create a mistrial by his own behavior.[19]

(25)   In his third point on appeal, Joyner claims that his absence from the courtroom during counsel's discussion with the trial judge about his displeasure with the court's ruling and the possible need for a cautionary instruction violated

---

[19] Trial Tr. at 21–23 (Oct. 6, 2015).

his right under Rule 43 to be "present . . . at every stage of the trial."[20] Neither trial counsel nor counsel for the State raised the Rule 43 issue at trial. We have reviewed the claim for plain error.[21] Plain error exists when the error complained of is apparent on the face of the record and is so prejudicial to a defendant's substantial rights as to jeopardize the integrity and fairness of the trial.[22]

(26) A defendant in a criminal case has a right to be present at trial based on the Sixth Amendment right to confront one's accusers and the common law "privilege of presence" during trial.[23] In Delaware, the right to be present at trial is addressed by Superior Court Criminal Rule 43(a).[24] Rule 43(b) and (c) list circumstances when the right to be present at trial is not required,[25] such as "[a]t a conference or argument upon a question of law."[26]

(27) When the defendant in *Capano v. State* did not "allege that he was absent during the 'traditional and formal confrontation stage of the trial,'"[27] we

---

[20] Del. Super. Ct. Crim. R. 43(a) ("*Presence required.* The defendant shall be present at the arraignment, at the time of the plea, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by this rule.").

[21] Del. Supr. Ct. R. 8.

[22] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

[23] *Capano v. State*, 781 A.2d 556, 653 (Del. 2001) (quoting *Shaw v. State*, 282 A.2d 608, 609 (Del. 1971)).

[24] *Supra* note 20.

[25] Super. Ct. Crim. R. 43(b) (listing when a defendant's "continued presence" is not required); R. 43(c) (listing when a defendant's "presence" is not required).

[26] R. 43(c). *See Capano v. State*, 781 A.2d at 653 (noting that "the right to be present at trial has definite boundaries" in discussion of R. 43(b)–(c)).

[27] *Capano v. State*, 781 A.2d at 653–54 (citing *Bass v. State*, 1989 WL 47282 Del. (April 5,

held that the defendant was required to "show that he suffered some prejudice as a result of his absence."[28] In this case, Joyner does not argue, and the record does not reflect, that he was absent during a traditional and formal confrontation stage of the trial or that he suffered prejudice as a result of his absence. Joyner was absent from an on-the-record discussion between counsel and the court outside the presence of the jury on a limited question of courtroom management and in a discussion where it was apparent the trial judge was attempting to protect Joyner's rights and was most likely to make sure he comport himself in a manner that would best serve his own interests in an effective defense. Under these circumstances, and in the absence of plain error, we conclude that Joyner's claim under Rule 43 is without merit.

(28) Joyner next claims that his indictment for both attempted rape first degree and rape second degree violated principles of Double Jeopardy.[29] The claim is without merit because the indictment charged Joyner with attempted rape first degree and rape second degree, not as lesser and greater offenses, but as separate offenses requiring proof of different elements. Double Jeopardy is not implicated when each offense charged requires proof of an element that the other

1989) (quoting *Dutton v. State*, 452 A.2d 127, 147 (Del. 1982))).

[28] *Id.* at 654.

[29] *See Feddiman v. State*, 558 A.2d 278, 288 (Del. 1989) ("The division of a single offense into multiple counts of an indictment violates the double jeopardy provisions of the Constitutions of the State of Delaware and of the United States.").

does not.[30]  Also, the claim is unavailing because Joyner waived any defect in the indictment by failing to raise the issue prior to trial.[31]

(29)  To the extent Joyner is attempting to claim that the evidence at trial did not support submitting the rape second degree charge to the jury because Brooks did not testify that Joyner penetrated her vagina with his finger, his claim is without merit.  When denying the motion for judgment of acquittal, the Superior Court found:

> There was testimony not from [Brooks] in court, but rather from [the forensic nurse examiner] when she read what Brooks told her at the hospital, and that did include a comment that the defendant had penetrated her with his finger.  That evidence is sufficient to meet the standard on the motion for judgment of acquittal because the jury could accept that testimony.[32]

Upon *de novo* review, we agree that the State presented sufficient evidence to submit the rape second degree charge to the jury and therefore conclude that the Superior Court did not err when denying the motion for judgment of acquittal.[33]

(30)  In his fifth point on appeal, Joyner contends that the prosecutor's closing statement was "prejudicial."  Joyner fails to identify any specific statements that support his claim, and our review of the record reveals no

---

[30] *Johnson v. State*, 709 A.2d 1158, 1159 (Del. 1998) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).
[31] Del. Super. Ct. Crim. R. 12(f).
[32] Trial Tr. at 65 (Oct. 8, 2015).
[33] *Jacobs v. State*, 2015 WL 6780786, at *2 (Del. Nov. 5, 2015) (citing *White v. State*, 906 A.2d 82, 85 (Del. 2006)).

impropriety by the prosecutor during her closing statement. The claim is without merit.

(31) Lastly, Joyner claims that his trial counsel was ineffective. The Court has not considered the claim. A claim of ineffective assistance of counsel is not reviewed by the Court in the first instance on direct appeal.[34]

NOW, THEREFORE, IT IS ORDERED that the State's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

/s/ Leo E. Strine, Jr.

Chief Justice

---

[34] *Desmond v. State*, 654 A.2d 821, 829 (Del. 1994).