IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TROY BOLDEN, | § | |
| | § | No. 425, 2024 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | Cr. ID No. 2205014461A (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |

Submitted: September 10, 2025
Decided: December 9, 2025

Before **SEITZ**, Chief Justice; **TRAYNOR**, and **LEGROW**, Justices.

Upon appeal from the Superior Court of the State of Delaware. **REVERSED.**

Nicole M. Walker, Esquire, Office of the Public Defender, Wilmington, Delaware, *for Appellant Troy Bolden*.

Jordan A. Braunsberg, Esquire, Delaware Department of Justice, Wilmington, Delaware, *for Appellee State of Delaware*.

**LEGROW**, Justice:

In *Reed v. State*, this Court explained the responsibilities of counsel whose client wishes to withdraw a plea before sentencing in a criminal proceeding.[1] Specifically, we held that counsel who receives such a request from a client must either file a motion to withdraw the plea or move to withdraw as counsel so that the defendant can file the motion with new counsel or *pro se*.[2] Our decision in *Reed* explained that a criminal defendant's right to control the objectives of representation before sentencing requires that counsel take steps to allow his client to pursue those objectives, even if counsel believes that a different outcome would be in the client's best interests.

In this case, after entering a no-contest plea to assault and firearm charges, the defendant sought to withdraw the plea *pro se*, alleging that he did not enter into the agreement knowingly or voluntarily. Consistent with our instruction in *Reed*, the defendant's counsel then moved to withdraw as counsel and to appoint substitute counsel. The trial court convened a hearing but did not address counsel's pending motion to withdraw. Instead, the court addressed the defendant's request to withdraw his plea, requiring the defendant to advocate the motion on his own.

---

[1] 258 A.3d 807 (Del. 2021).

[2] *Reed*, 258 A.3d at 828–29.

1

The court eventually allowed the defendant to withdraw his plea, concluding that the plea was not voluntary, but denied counsel's motion to withdraw. Counsel continued to represent the defendant at trial, and a jury eventually convicted him of several charges. Now the defendant appeals, arguing that the trial court erred in allowing him to represent himself in the plea-withdrawal proceedings and in denying counsel's motion to withdraw.

This case requires us to address what a trial court must do when defense counsel moves to withdraw after a defendant expresses a desire to withdraw from a plea agreement. We hold that the trial court must first address and resolve the motion to withdraw as counsel. The resolution of that motion, which is within the trial court's sound discretion, turns on the established "good cause" standard. When a defendant alleges that the plea was coerced or involuntary because of trial counsel's representation, and other factors do not suggest that the defendant is engaged in gamesmanship, the law favors appointing substitute counsel to represent the defendant. However the trial court resolves counsel's motion to withdraw, that motion must be decided before the court may address a plea-withdrawal motion.

Because the trial court failed to address counsel's motion to withdraw as counsel at the outset and allowed the defendant to represent himself in the plea-withdrawal proceedings without the defendant expressly or impliedly waiving his right to counsel, the defendant was denied his constitutional right to counsel at a

2

critical stage of the proceedings. Accordingly, we reverse the defendant's convictions and remand for further proceedings regarding trial counsel's motion to withdraw from representation and the defendant's motion to withdraw the plea.

## I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On May 28, 2022, two neighbors, Jamie Faulkner and Robert States, were chatting on the front steps of their apartment complex when Troy Bolden, another neighbor, came down the stairs and stood in the doorway. Bolden told his neighbors that "[s]omebody's been knocking on my door. Banging on my door."[3] Faulker did not see anyone enter the apartment building, and said "[m]an, ain't nobody been banging on your door."[4] Bolden responded "[m]an, nobody talking to you," and then allegedly shot Faulkner in his neck and back.[5]

Briel Mykoo, who lived down the street and was outside at the time of the shooting, heard "two pops" and saw what she believed was gunpowder smoke. Mykoo also heard Faulkner scream "[m]y neighbor shot me."[6] Mykoo called 911. Within minutes, several officers responded, took statements, and waited for the paramedics to arrive for Faulkner. Two officers also apprehended Bolden as he was

---

[3] App. to Opening Br. at A124 (Testimony of Jamie Faulkner).

[4] *Id.* (Testimony of Jamie Faulkner).

[5] *Id.* (Testimony of Jamie Faulkner).

[6] *Id.* at A122(f) (Testimony of Briel Mykoo).

limping down the street. Bolden was searched before being transported to the hospital, but officers did not find a firearm.

At the hospital, Faulkner informed a nurse that "Psych" shot him. Faulkner provided Psych's physical description and stated that the gun had been two feet away from him when he was shot. Faulkner also said that Psych lived in his apartment building.

Based on this information, a SWAT team cleared the apartment building and executed a warrant to search Bolden's apartment. There they found a book bag containing Bolden's Social Security paperwork, a metro card, and one live round of .25 caliber Aguila ammunition. Although he denied being the shooter, Bolden admitted to being at the scene, and his hands tested positive for gunshot residue. Delaware State Police analyzed the two shell casings recovered from the scene and determined that they were discharged from the same firearm. Those casings were .25 caliber Aguila ammunition. Faulker also identified Bolden in a photo lineup, and police discovered a Facebook page belonging to "Psych-Psych" that had a url containing "troy" and indicated that the user was married to Monica Bolden, who is Bolden's wife.[7]

---

[7] *Id.* at A125–26 (Testimony of Jamie Faulkner) (discussing the photo lineup); *id.* at A130 (Testimony of Brendan Wham) (discussing the Facebook page).

Bolden was arrested and indicted on charges of First-Degree Attempted Murder, Possession of a Firearm During the Commission of a Felony (PFDCF), Reckless Endangering First Degree, and Possession of a Firearm by a Person Prohibited (PFBPP). The State extended a plea offer to Bolden at final case review, but during the case review Bolden appeared not to comprehend the minimum and maximum sentences he faced and their connection to the plea offer.[8] The court offered Bolden a recess to discuss the plea further with his appointed counsel ("Trial Counsel"). During the recess, Bolden met with the prosecutor with Trial Counsel present and expressed a willingness to plead no contest. That afternoon, Bolden completed the plea colloquy with the court, stating that he entered into the plea freely and voluntarily.[9] Bolden pleaded "no contest" to Assault Second Degree and the two firearm charges in exchange for the State's agreement to recommend no more than 15 years in prison at sentencing.[10]

About two months later, however, Bolden attempted to file a *pro se* motion to withdraw the plea. Because Bolden was represented by counsel, the motion was not docketed and instead was forwarded to Trial Counsel.[11] After receiving Bolden's motion, which alleged that Trial Counsel coerced him to enter the plea and that

---

[8] App. to Answering Br. at B8–13 (Final Case Review and No Contest Plea Tr.).

[9] *Id.* at B20–23 (Final Case Review and No Contest Plea Tr.).

[10] *Id.* at B3, B22–23 (Final Case Review and No Contest Plea Tr.).

[11] App. to Opening Br. at A4 (Super. Dkt. at D.I. 23). *See* Super. Ct. Crim. R. 47.

5

Bolden entered the plea without a full understanding of the evidence against him, Trial Counsel filed a motion to withdraw as counsel (the "Motion to Withdraw as Counsel"), which attached Bolden's *pro se* motion as an exhibit (the "Plea-Withdrawal Motion").[12] The Motion to Withdraw as Counsel alleged that "a conflict ha[d] arisen between the client and Counsel" and that there had been a breakdown of their attorney-client relationship because of Bolden's lack of "trust and confidence."[13] Trial Counsel asked the court to appoint substitute counsel to represent Bolden.

On October 9, 2023, the Superior Court held a hearing with the State, Trial Counsel, and Bolden. The court advised the parties that the hearing was convened to address both the Motion to Withdraw as Counsel and Bolden's Plea-Withdrawal Motion.[14] But the trial court began with Bolden's Plea-Withdrawal Motion without

---

[12] App. to Opening Br. at A22–25 (Motion to Withdraw Guilty Plea) ("[Trial counsel] was cohersive [sic] in convincing me that my case was not winnable. I had full intentions of declining the plea and taking this case to trial but was discouraged to do so by the confusion from my attorney concerning my evidence. After consideration of the facts afterwards, I have determined that my counsel acted in bad faith and not in my best interest. To date I have only been able to view part of a video once. Without viewing my full discovery I could not assess the State[']s case and make the most informed decision regarding the direction of my case. For counsel to be effective trust must be built up through pretrial contact, review of strengths and weaknesses of the states [sic] case and a discussion about the defendants [sic] chances of an [ac]quittal after trial. None of that took place and no trust was built up. The defendants [sic] counsel has not been effective in giving this case the attention it needs per the ABA stand of Criminal Justice 4-3.8.").

[13] *Id.* at A16–19 (Motion to Withdraw as Counsel).

[14] *Id.* at A29 (Plea-Withdrawal Hearing).

first resolving the Motion to Withdraw as Counsel. The court addressed Bolden directly and allowed him to present his reasons for seeking to withdraw the plea.

Bolden argued that he should be allowed to withdraw the plea because he lacked confidence in Trial Counsel's representation. Specifically, Bolden stated that Trial Counsel did not explain the evidence against him and repeatedly told Bolden that he would lose if he went to trial.[15] Bolden explained that the medications he took to treat his mental health conditions made it difficult for him to understand the charges and range of sentences he faced, and that he was confused when he signed the plea paperwork and engaged in the plea colloquy with the judge.[16]

The court attempted to explain to Bolden the range of sentences that he faced under the plea agreement as opposed to the range of sentences he would face if he was convicted at trial. Bolden again expressed confusion about the possible sentences and the evidence and charges against him. Bolden did, however, demonstrate some general understanding about the process, including that the judge was not bound by the parties' sentencing recommendations.

During the court's discussions with Bolden, Trial Counsel referred the court back to his Motion to Withdraw as Counsel and the corollary request to appoint

---

[15] *Id.* at A31–32 (Plea-Withdrawal Hearing).

[16] *Id.* at A30–36 (Plea-Withdrawal Hearing).

substitute counsel to assist Bolden in discussions about withdrawing the plea.[17]  Trial

Counsel cited this Court's decision in *Reed v. State*, but the trial court stated that

*Reed* "doesn't apply here . . . . We're past that[:]"[18]

> I don't think there is any ineffective assistance of counsel because in the Re[ed] case that was not filing the motion to withdraw.  This is a completely different situation, and we can't allow the defendant to merely assert that counsel has been ineffective.[19]

> The trial court viewed Bolden's concerns as expressing general dissatisfaction

with counsel, and the court informed Bolden that his defense counsel likely would

not change.[20]  Both defense counsel and the State argued to the court that conflict

counsel should be appointed, but the judge stated that he did not find any ineffective

assistance "at this point."  The court did not otherwise address the Motion to

Withdraw as Counsel.[21]  Instead, the court instructed Trial Counsel to meet with

Bolden again to discuss the case and the charges and to then advise the court and

State whether Bolden still wanted to withdraw the plea.[22]

---

[17] *Id.* at A46 (Plea-Withdrawal Hearing).

[18] App. to Opening Br. at A47 (Plea-Withdrawal Hearing).

[19] *Id.* at A48–49 (Plea-Withdrawal Hearing).

[20] *Id.* at A43 (Plea-Withdrawal Hearing) ("Chances are, that's your counsel"); *id.* at A48 (Plea-Withdrawal Hearing) (stating that "[t]he [defendant's] mere dissatisfaction with his counsel does not justify the appointment of different counsel").

[21] App. to Opening Br. at A47–49 (Plea-Withdrawal Hearing) (discussing defense counsel's motion to withdraw under *Reed* and request to appoint conflict counsel, which the court found unconvincing); *id.* at A54–56 (Plea-Withdrawal Hearing) (discussing the State's experience in a different case with a similar claim where the judge appointed conflict counsel).

[22] App. to Opening Br. at A56 (Plea-Withdrawal Hearing).

After meeting with Bolden again, defense counsel informed the court that Bolden remained steadfast in his desire to withdraw the plea. The Superior Court then issued an order finding that Bolden's plea was involuntary and permitting him to withdraw it. The court's order did not rule on the Motion to Withdraw as Counsel. The order stated:

> Defendant maintains that his plea was not voluntary. Although Defendant did specifically assert legal innocence, he was given an opportunity to review the evidence. The Court reviews five factors in determining a Motion to Withdraw. The Court focuses on the second (voluntary) and third (assert legal innocence). The Court finds that the plea was not voluntary, and defendant should be allowed to assert his legal innocence. The Motion is **GRANTED**. The No Contest Plea may be withdrawn.[23]

About two months later, on May 9, 2024, the court held an office conference with Trial Counsel and the State.[24] Bolden was not present. The State expressed concern with Trial Counsel continuing to represent Bolden, suggesting that the court's involuntariness finding also implicitly found that "the plea was coerced by defense counsel."[25] The State also told the court that Trial Counsel reportedly "doesn't talk to [Bolden] that much."[26] Trial Counsel confirmed that he continued to have difficulties communicating with Bolden.[27] In response, the court stated that

---

[23] Appellant's Opening Br. Ex. A.

[24] App. to Opening Br. at A5 (Super. Dkt. at D.I. 35).

[25] *Id.* at A61 (Office Conference).

[26] *Id.* at A59–61 (Office Conference).

[27] *Id.* at A61–62 (Office Conference).

9

he viewed granting Bolden's Plea-Withdrawal Motion as effectively mooting the concerns about Trial Counsel's continued representation.[28]  The Court stated:

> [G]ranting [] the motion to withdraw the guilty plea, to me, makes those other concerns moot.  [Bolden's] big thing was, I really didn't want to enter this plea, and I needed my attorney to make a motion.  That type of thing.  Once he did that, once I granted it, it seems like we start from the beginning in the case.  So that was kind of my thinking.  I will do-up an order supporting that.

The Court's clarifying order, dated May 15, 2024, stated that there were no grounds to terminate Trial Counsel's representation because counsel's "conduct did not fall below an objective standard of reasonable[ness]."[29]

Bolden proceeded to trial with Trial Counsel representing him.  The jury convicted Bolden of Attempted Murder and PFDCF, and the court sentenced him to 23 years in prison, followed by probation.[30]  Bolden filed a timely appeal.

## II. ANALYSIS

Bolden raises two arguments on appeal.  First, he contends that the Superior Court violated his Sixth Amendment right to counsel during the proceedings on his Plea-Withdrawal Motion.  Specifically, Bolden maintains that, because the court deferred ruling on the Motion to Withdraw as Counsel, he was effectively unrepresented during the plea-withdrawal process, which is a critical stage in the

---

[28] *Id.* at A61 (Office Conference).

[29] Appellant's Opening Br. Ex. B.

[30] App. to Opening Br. at A7–8 (Super. Dkt. at D.I. 47).

criminal proceedings. Even if the court did not violate his constitutional rights, Bolden argues, the court abused its discretion when it eventually denied the Motion to Withdraw as Counsel and refused to appoint substitute counsel. The State responds that the court did not err or abuse its discretion in denying Trial Counsel's motion because Bolden's allegations of ineffectiveness and coercion were unsubstantiated and conclusory, and the law does not require a trial court to appoint new counsel irrespective of the merits of a defendant's motion.

Second, Bolden argues that the trial court denied him the right to effective counsel at trial by allowing Trial Counsel to continue to represent him after the court found that the plea was involuntary. Bolden contends that the court's ruling substantiated his claims that Trial Counsel could not effectively represent him. The State responds that the court's decision granting the Plea-Withdrawal Motion did not validate Bolden's claims that Trial Counsel was ineffective. Accordingly, the State argues, the court did not act unreasonably in allowing Trial Counsel to continue to represent Bolden. Because we conclude that the court erred in allowing Bolden to proceed without counsel in the plea-withdrawal proceedings, we reverse Bolden's convictions without reaching his second claim on appeal.

We review a trial court's denial of a motion to withdraw as counsel for an abuse of discretion unless a constitutional violation is alleged, in which case we

review the claim *de novo*.[31]  Here, we conclude that the trial court's failure to first address the Motion to Withdraw as Counsel effectively left Bolden to represent himself during the plea-withdrawal proceedings, violating Bolden's right to counsel under the Sixth Amendment.

## A.    Defense Counsel's Responsibilities under *Reed*

The right to the effective assistance of counsel in a criminal proceeding is guaranteed by the Sixth Amendment to the United States Constitution and is a foundational principle in our criminal justice system.[32]  The right to counsel extends to all the "critical stages that are part of the whole course of a criminal proceeding."[33]  We recently confirmed in *Reed* that a request to withdraw a guilty plea is one such critical stage in which a defendant must be accorded the right to counsel.[34]

In a criminal proceeding, defense counsel controls and manages most of the tactical choices and day-to-day aspects of the case.  Although counsel should consult with his client about important decisions and keep him informed, a defendant does

---

[31] *See State v. Robinson*, 209 A.3d 25, 46 (Del. 2019); *Cooke v. State*, 977 A.2d 803, 840 (Del. 2009); *Bultron v. State*, 897 A.2d 758, 762 (Del. 2006).

[32] U.S. CONST. amend VI; *Purnell v. State*, 254 A.3d 1053, 1104 (Del. 2021) ("The right to counsel is the foundation of our adversary system.  The right is a bedrock principle of justice.") (quotation omitted).

[33] *Lafler v. Cooper*, 566 U.S. 156, 165 (2012).

[34] *Reed*, 258 A.3d at 822.  *See also White v. State*, 748 A.2d 914, 2000 WL 368313, at *1 (Del. Mar. 23, 2000) (TABLE).

not have a right to approve every decision that counsel makes.[35] But there are certain fundamental decisions that a defendant controls and that cannot be delegated to counsel. Those decisions include whether to enter a plea and whether to attempt to withdraw a plea.[36]

For those reasons, we held in *Reed* that if a criminal defendant expresses a desire to withdraw a plea before sentencing and does not rescind that request, defense counsel has a binary choice: (1) file the requested motion, or (2) move to withdraw as counsel.[37] Counsel cannot avoid that choice merely because he disagrees with the client's objective or believes that there is no merit to the bid to withdraw the plea.[38] Importantly, we went on to explain in *Reed* that "[i]f the defendant's reasons for filing the motion to withdraw include an assertion that his or her counsel has been ineffective or coerced the defendant into pleading, then defense counsel should ask the court to appoint new unconflicted counsel to handle the filing of the motion."[39]

---

[35] *Florida v. Nixon*, 543 U.S. 175, 187 (2004); *Cooke*, 977 A.2d at 480.

[36] *Reed*, 258 A.3d at 828–29.

[37] *Id.* at 829 ("a criminal defendant's control of the objectives of the representation prior to sentencing requires that counsel either obey an instruction to file a motion to withdraw a guilty plea, or seek leave to withdraw [as counsel] so that the defendant can file the motion with other counsel or *pro se*.").

[38] *Id.* Of course, counsel's decision is not unbounded; the decision whether to file a motion to withdraw a plea is subject to counsel's professional obligations to the court not to file frivolous motions. Del. Lawyers' R. Prof'l Conduct 3.1.

[39] *Reed*, 258 A.3d at 829.

## B.      The Trial Court's Response to a *Reed* Motion

Our decision in *Reed* did not address how a trial court should respond to a motion to withdraw as counsel in this context because that question was not before us. But, contrary to the trial court's conclusion in this case, our decision in *Reed* was not irrelevant to the motions before the court in Bolden's case. We identified in *Reed* the choices available to trial counsel whose client wants to withdraw a plea. If trial counsel chooses to move to withdraw from representing a defendant, it follows that the court must address and resolve that motion before addressing the defendant's request to withdraw the plea.[40]

In addressing trial counsel's motion to withdraw and request for appointment of substitute counsel, a trial judge enjoys broad discretion.[41] The Sixth Amendment does not afford an indigent defendant the right to be appointed counsel whom the defendant prefers.[42] Once counsel has been appointed, a defendant has a right to

---

[40] Our decision in this case primarily turns on the sequence in which the court addressed the pending motions, which had the effect of leaving Bolden without the advice of counsel during a critical stage of the case. For that reason, in addition to several key factual differences, this case is distinct from *United States v. Rivernider*, on which the State relied on appeal. 828 F.3d 91 (2d Cir. 2016). In *Rivernider*, when the defendant sought to withdraw the plea, trial counsel filed a motion to withdraw as counsel. The trial court considered and ultimately denied that motion, holding that there was no good cause to allow counsel to withdraw and, because the defendant made no plausible allegations of coercion, there was no basis to appoint substitute counsel. The court then went on to consider and deny the defendant's motion to withdraw the plea, which the defendant's counsel had obtained permission for the defendant to file *pro se*. *Rivernider*, 828 F.3d at 109–10.

[41] *Joyner v. State*, 155 A.3d 832, 2017 WL 444842 at * 3 (Del. 2017) (TABLE).

[42] *Bultron*, 897 A.2d at 762–63.

substitute counsel only upon a showing of good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict that could lead to an apparently unjust verdict.[43]  Mere dissatisfaction with appointed counsel does not, by itself, meet the good cause standard.[44]

On the other hand, we stated in *Reed* that "defendants who have moved to withdraw their guilty plea in Superior Court are routinely appointed new counsel for that purpose, especially when the defendant raises claims of coercion or ineffective assistance of counsel."[45]  A trial court must evaluate each motion on its merits and on the facts presented to the court, and the court must exercise its sound discretion when applying the good cause standard to those facts.  But when the circumstances do not suggest that a defendant is engaged in gamesmanship or using a plea-withdrawal motion to create an unfair tactical advantage,[46] the interests of justice will often favor appointing substitute counsel in these relatively unusual circumstances.  Ensuring that the defendant has the advice of counsel in deciding

---

[43] *United States v. Gillette*, 738 F.3d 63, 78 (3d Cir. 2013); *United States v. Welty*, 674 F.2d 185, 187 (3d Cir. 1982); *McKee v. Harris*, 649 F.2d 927, 931 (2d Cir. 1981).

[44] *See Bultron*, 897 A.2d at 763; *Muto v. State*, 843 A.3d 696, 2004 WL 300441, at *2 n.9 (Del. 2004) (TABLE).

[45] *Reed*, 258 A.3d at 828 n.101 (citing cases).

[46] A trial court retains "wide latitude in balancing [a defendant's] right to counsel of choice against the needs of fairness, and against the demands of its calendar."  *United States v. Gonzalez-Lopez*, 548 U.S. 140, 152 (2006).  A trial court may properly deny a request for new counsel made at the last minute or under circumstances intended to cause delay.  *United States v. Rankin*, 779 F.2d 956, 959 (3d Cir. 1986); *United States v. Laura*, 607 F.2d 52, 57 (3d Cir. 1979).

*whether* to pursue a plea-withdrawal motion is at least as critical to the justice system

as ensuring that the defendant has an advocate in pursuing such a motion.

If a trial court concludes that there is no good cause to appoint substitute

counsel and the defendant remains steadfast in his desire to move to withdraw his

plea, then the trial court must undertake the well-established process to ensure that

the defendant is aware of the advantages and disadvantages of representing himself,

and the court must provide the necessary warnings under *Faretta v. California*.[47]  A

defendant's waiver of counsel can be deemed effective only where the trial court

conducts a "searching inquiry" sufficient to satisfy the court that the waiver of

counsel was knowing and voluntary.[48]  The Third Circuit summarized the necessary

colloquy in *United States v. Welty*:

> In order to ensure that a defendant truly appreciates the "dangers and
> disadvantages of self-representation," the district court should advise
> him in unequivocal terms both of the technical problems he may
> encounter in acting as his own attorney and of the risks he takes if his
> defense efforts are unsuccessful.  The district court judge should tell the
> defendant, for example, that he will have to conduct his defense in
> accordance with the Federal Rules of Evidence and Criminal
> Procedure, rules with which he may not be familiar; that the defendant
> may be hampered in presenting his best defense by his lack of
> knowledge of the law; and that the effectiveness of his defense may
> well be diminished by his dual role as attorney and accused.
> [Moreover, the court should apprise the defendant of] "the nature of the
> charges, the statutory offenses included within them, the range of

---

[47] *Bultron*, 897 A.2d at 763–65.  In this context, the defendant also should be advised that if his *pro se* plea-withdrawal motion succeeds, he will have to retain private counsel or represent himself at trial.

[48] *Id.* at 765 (quoting *Welty*, 674 F.2d at 188–89).

16

allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter."[49]

After resolving counsel's motion to withdraw from representing the defendant, the trial court then may consider the defendant's motion to withdraw the plea. How the court addresses that motion will necessarily depend on the outcome of counsel's motion to withdraw—if substitute counsel is to be appointed, then new counsel must be afforded time to meet with the defendant, evaluate the merits of a request to withdraw the plea, and counsel the defendant regarding that motion. If substitute counsel is not appointed and the defendant elects to proceed *pro se*, the court should address the motion to withdraw the plea under Superior Court Criminal Rule 32(d).

## C. Application of the Standards in this Case

In the Superior Court proceedings in Bolden's case, Trial Counsel followed the path laid down in *Reed*. Because Bolden alleged in his *pro se* motion that trial counsel was ineffective and coerced the plea, Trial Counsel filed the Motion to Withdraw as Counsel and asked the court to appoint new counsel for Bolden. Although that motion attached Bolden's *pro se* motion as an exhibit, there was no pending motion to withdraw the guilty plea on the Superior Court's docket. Nevertheless, the trial court did not first resolve the Motion to Withdraw as Counsel.

---

[49] *Welty*, 674 F.2d at 188–89 (citations omitted).

Instead, the trial court moved immediately to Bolden's request to withdraw his plea and—with no pending motion on the docket—effectively required Bolden to make and advance an oral, *pro se* motion to withdraw his plea. The court never engaged in a colloquy with Bolden to determine whether he wanted to proceed without counsel or understood the implications of doing so.[50] And the court later refused to let Trial Counsel withdraw and to appoint substitute counsel, despite Bolden's allegations that his plea was coerced, Trial Counsel's representations that a conflict had arisen and communications had broken down, and the court's conclusion that Bolden's plea was involuntary.

The trial court's decision to deny the Motion to Withdraw as Counsel and refusal to appoint substitute counsel only after the plea was withdrawn left Bolden without effective counsel in all aspects of the plea-withdrawal proceedings.[51] Importantly, he did not have the advice of counsel regarding whether to pursue the motion. A criminal defendant cannot be presumed to make critical decisions without

---

[50] The State agreed at oral argument that such a colloquy should have been conducted before Bolden was allowed to advance his pro se motion. Oral Argument, at 35:33–39, *Bolden v. State*, No. 425, 2024 (Del. Sept. 10, 2025). The State argued, however, that Bolden was not prejudiced because he ultimately prevailed on that motion. We disagree with that prejudice analysis. *See infra* note 53.

[51] We do not suggest that any part of Trial Counsel's representation was ineffective. Rather, Trial Counsel represented to the court that a conflict had arisen between counsel and the defendant and that their communications had broken down. Nothing in the record suggests that the conflict resolved or the communications improved.

18

counsel's advice.[52]    Accordingly, although Bolden ultimately succeeded in withdrawing his plea, the absence of counsel was not harmless; the presence of counsel may well have changed Bolden's decision to pursue the motion in the first place.[53]

Because Bolden was denied the assistance of counsel at the plea-withdrawal stage, his convictions must be reversed and this case must be remanded to the trial court.  In the Superior Court, the no-contest plea should be reinstated and substitute counsel should be appointed.  With the advice of new counsel, Bolden may decide whether to pursue a new plea-withdrawal motion.[54]

## III.    CONCLUSION

For the foregoing reasons, we **REVERSE** Bolden's convictions and sentence and **REMAND** this case for further proceedings consistent with this opinion. Jurisdiction is not retained.

---

[52] *Lafler*, 566 U.S. at 165.

[53] The State did not make a harmless-error argument in this case, but it asserted that Bolden was not prejudiced in representing himself because the court granted his Plea-Withdrawal Motion. That prejudice analysis relates to the *Strickland* standard for ineffective assistance of counsel, which does not typically apply in a direct appeal.  We do not view *Strickland* as directly relevant in this appeal because we are evaluating the trial court's decisions.  In any event, we hold that Bolden was prejudiced because he did not have the assistance of counsel in deciding whether to pursue plea withdrawal.  It follows that the trial court's error could not have been harmless.

[54] During oral argument on appeal, both sides agreed that if this Court reversed Bolden's convictions, his plea should be reinstated.  Oral Argument, at 13:35–14:22, 27:58–29:12.